ELATERITE PAINT & MANUFACTURING COMPANY v. S. E. FROST COMPANY and Others.[1]

July 31, 1908.

Nos. 15,718—(211).

**Trade Secret—Injunction.**

Equity recognizes a secret in trade as property, and will protect trade secrets by injunction as against those who seek to disclose or use them by a violation of confidential relations, or contracts, express or implied, arising from their relations to or dealings with the owner thereof. Any person, however, lawfully acquiring knowledge of such secrets, not patented, may use them, if the manner of obtaining such knowledge and the use of them would not constitute a breach of confidence or good faith.

**Same.**

The findings and decision of the trial court, to the effect that the defendants be enjoined from using certain formulas and processes for the making of paints from elaterite, claimed by the plaintiff to be its trade secrets, are sustained by the evidence, within the rule stated.

Action in the district court for Hennepin county to enjoin defendants from using .certain formulas and processes for the manufacture of paint from elaterite which were claimed to be trade secrets and of

[1] Reported in 117 N. W. 388.

which plaintiff alleged it was sole proprietor. The case was tried before Dickinson, J., who found in favor of plaintiff. Defendants' motion for amended findings was denied. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Hale & Montgomery,* for appellants.

*M. H. Boutelle* and *Charles L. Powell,* for respondent.

START, C. J.

Action brought in the district court of the county of Hennepin to enjoin the defendants from using certain formulas and processes for the manufacture of paint from elaterite, of which the complaint alleged the plaintiff was the sole proprietor, and that it owned and used them as trade secrets, and, further, that the defendants had fraudulently conspired to obtain by unfair means such proprietary processes and trade secrets, and fraudulently to use the same in establishing a rival manufacturing industry. The answer was, in effect, a general denial.

The issues were tried by the court without a jury, and findings of fact and conclusions of law favorable to the plaintiff were made, whereby judgment was directed for the plaintiff perpetually enjoining the defendants from disclosing or using such trade secrets, and reserving jurisdiction by the court over the cause for the purpose of stating an account of damages sustained by the plaintiff, if any. Thereupon the defendants moved the court to amend its findings and conclusions of law in the particulars stated in the notice of motion, which was denied. They then made a motion for a new trial, on the grounds of errors of law and that the findings and decision were not sustained by the evidence. The trial court made its order denying the motion, from which the defendants appealed.

No question of law for our consideration is presented by the record and the assignments of error, for the law of the case is undisputed, and is to the effect that equity recognizes a secret in trade as property, and will protect trade secrets by injunction as against those who seek to disclose or use them by a violation of confidential relations, or contract stipulations, express or implied, arising from their relations to or dealings with the owner thereof. Any person, however, lawfully acquiring a knowledge of such secrets, not patented, may use them, if the

manner of obtaining such knowledge and the use of them would not constitute a breach of confidence or good faith. Paul, Trade-Marks, §§ 207–217; Hopkins, Trade-Marks, § 92; Watkins v. Landon, 52 Minn. 389, 54 N. W. 193, 19 L. R. A. 236, 38 Am. St. 560.

Counsel for the defendants, in their brief, discuss the questions of fact raised by their assignments of error under the subdivisions following:

"First. There is no finding of fact that defendants ever actually obtained or used any of the plaintiff's trade secrets, and therefore the court erroneously reserved the case for an accounting.

"Second. If there is a finding of fact that such trade secrets were disclosed to defendants and were being actually used by them in their manufacture of paints from kapak, then the same is not justified or sustained by the evidence.

"Third. All the formulas and processes employed by the plaintiff were not secret, and therefore such as were not secret could not be the subject of an injunction from disclosure or use."

In order to justify the relief granted to plaintiff by the order for judgment in this case, it is essential that the plaintiff should have established by competent evidence the fact that the defendants were using or attempting to use the plaintiff's trade secrets, and that the court should have so found. It is urged by the defendants that the record shows that such fact was neither established by the evidence nor found by the trial court.

The here material findings of fact made by the trial court, summarized, are to the effect following:

2. The plaintiff, at all times stated in the complaint, has been engaged in the manufacture and sale of paints made by the use of the mineral elaterite as the basic ingredient. Such paints are generally and favorably known to the trade as "Elaterite Paints."

3. The processes and formulas used by plaintiff in the manufacture of the various brands of such paints were originally discovered by James Gregg Hanna, and were maintained by him as proprietary secrets until February 21, 1905, when he made a written contract with the plaintiff, whereby he assigned and transferred them to the plaintiff, with any and all improvements or modifications of such original

formulas, or any new methods, formulas, or processes that might be discovered by him, or by him in connection with the plaintiff, for the manufacture of paints from the mineral elaterite or kindred products, during the time he remained in plaintiff's employ, all of which should be, become, and remain the absolute property of plaintiff, and that he would forever refrain from in any wise making use thereof, or disclosing the same, or any thereof, to any persons, or parties whatsoever without the consent of the plaintiff in writing.

4. All the terms and conditions of such contract on the part of the plaintiff were fully carried out by it, and Hanna entered the employ of plaintiff on or about the date of such contract, and pursuant thereto, and continued therein in the capacity of superintendent of plaintiff's manufacturing operations until May 1, 1906. During the period of such employment various changes and modifications were made in the original methods, processes, and formulas by and as a result of the experiments of Hanna, all of which the plaintiff has at all times kept and maintained as its proprietary trade secrets.

5. After the making of such contract, Frank R. Morrisey was employed by the plaintiff in its manufacturing operations, whereby he learned such trade secrets, and knew that they belonged to the plaintiff, and were unknown and undisclosed to the trade.

6. For some time previous to May 10, 1906, the defendant Frost Company had been the agent of plaintiff in the state of Minnesota and territory tributary thereto, engaged as such agent in the sale of the plaintiff's paints, and it was during all the times covered by its employment as such agent fully cognizant of the fact that plaintiff's manufactured product had been prepared by secret processes and formulas constituting trade secrets, and unknown to the trade, and that they were an important and essential element in the conduct of plaintiff's business, and the marketing of its manufactured product.

7. The defendant Frost Company, at the several times hereinafter mentioned, knew that Hanna and Morrisey were confidential employees of the plaintiff, engaged in the active conduct and superintendency of plaintiff's manufacturing business and operations, and that they were thoroughly familiarized with them, including its secret and proprietary methods and processes.

8. On or about May 1, 1906, and while the defendant Frost Com-

pany was still the agent of plaintiff in the sale of its manufactured product, the defendant Frost Company and its active managers, the defendants Frost and Shattuck, entered into a conspiracy with certain other parties, having for its object the inducing of plaintiff's confidential employees, Hanna and Morrisey, to leave plaintiff's employ and to become associated with the Frost Company in the establishment of a new and rival concern to engage in the manufacture of the same commodity which the plaintiff was manufacturing under the superintendency of Hanna and Morrisey, and by the use and employment of the knowledge and experience of Hanna and Morrisey of plaintiff's methods of manufacture, and by the use of the knowledge and experience in such manufacture obtained by them during their employment by plaintiff. It was further contemplated by the parties to such conspiracy that the commodity intended to be manufactured as a result thereof should be of substantially the same character as that of plaintiff's manufacture, and that the same should be and constitute a rival and competitive commodity in the trade. It was further contemplated by such parties that, on the consummation of such plan, Hanna and Morrisey should leave the employment of plaintiff, and become the active managers and superintendents of the new business, and that the Frost Company should sever its connection as agent of plaintiff and assume the active charge of marketing the competitive product so intended to be manufactured.

9. In the carrying out of such conspiracy, certain inducements were made to Hanna and Morrisey, whereby they were induced to, and did, leave plaintiff's employ and enter into the employ of the organization on May 10, 1906, and associated themselves with and became the active superintendents of manufacture for the defendant Frost Company, which at or about the same time severed its connection with plaintiff as agent, and entered upon the business of manufacturing paints from elaterite and kindred products, of the same general character, used for the same general purpose, and bearing substantially similar designations in the trade, as the paints of plaintiff's manufacture, and it has been at all times since the commencement of such manufacture as herein found, and still is, engaged therein under the superintendency of Hanna and Morrisey.

10. Previous to the carrying out and consummation of the plan and conspiracy hereinbefore found, neither the defendant Frost Company nor its codefendants and active managers, or either of them, had in any wise been engaged in the manufacture of paints, and, independent of the knowledge obtained from Hanna and Morrisey, neither of the defendants had any knowledge of the methods, processes, or formulas used and employed by the plaintiff in the manufacture of paints from the mineral elaterite and kindred products. The object and purpose of the parties to the conspiracy was to enable the defendant Frost Company to obtain the benefit of the knowledge and experience of plaintiff's employees, Hanna and Morrisey, and to apply such knowledge to its benefit in the manufacture of paints from elaterite and kindred products, of the same general character and for similar purposes and of similar designation to the commodity of plaintiff's manufacture, and to enable it to establish the commodity of its manufacture as a rival and competitive commodity to that of plaintiff's manufacture with the trade, by representing the substantial similarity of the goods of its manufacture to those of the plaintiff, and by representing to the trade that its goods were manufactured under the supervision and superintendency of Hanna and Morrisey, by whom such goods had formerly been manufactured in plaintiff's behalf.

11. Upon and after the consummation of such plan and conspiracy, as hereinbefore found, the defendant Frost Company immediately introduced its goods, so manufactured, to the trade as substantially similar to the goods of plaintiff's manufacture, and further represented to the trade that its goods were prepared under the supervision and superintendency of the same parties who had previously superintended such manufacture in plaintiff's behalf.

While there is in the foregoing findings no concise and direct finding that the defendants were making use of the plaintiff's formulas and processes, yet, construing the findings as a whole, they must be and are held sufficient as a finding that the defendants were making use of such trade secrets of the plaintiff. The formation of a conspiracy by the defendants for the purpose stated, its execution, and the results thereof are found as facts by the court. The serious ques-

tion, however, is whether such findings of the trial court are sustained by the evidence.

The contention of the defendants is to the effect that the evidence is practically conclusive that the plaintiff, by reason of the difficulty of obtaining crude elaterite ore, abandoned the formulas and processes obtained from Hanna, and substituted therefor a formula for the use of kapak, which is a refined product manufactured from crude. elaterite ore by a process called "fractional distillation"; that the manufacture of paints by the use of kapak is not, and never has been, a trade secret, for it has been the custom of the corporation manufacturing it to furnish to its customers the formula, with detailed information regarding the use of kapak for the manufacture of certain kinds of paint; that the defendants' paints are manufactured from kapak by the use of such public formula, and not otherwise; and, further, that the defendants have never used or obtained any information of the Hanna formulas or processes.

An examination of the record shows that the defendant Frost and other witnesses on behalf of the defendants gave testimony tending to support in its entirety this claim of the defendants. The credibility of the witnesses, however, was under the circumstances of this case, as disclosed by the evidence, a question for the trial judge. The record discloses many circumstances indicating a purpose on the part of the defendants to appropriate to their own use, by means of the knowledge thereof by Hanna and Morrisey, the business and trade secrets of the plaintiff. It is a significant fact that plaintiff's sales agent and its trusted employees, who superintended the manufacturing of its paints and knew its trade secrets, should all be found united in the manufacture and sale of substantially the same commodity as the plaintiff's.

Upon a consideration of the whole evidence, we are of the opinion that the findings of the trial court, which are assigned as error, are not obviously against the preponderance of the evidence, and accordingly hold that they are sustained by the evidence.

The defendants urge that the order for the injunction is too broad, in that it includes formulas and processes employed by the plaintiff which were not secret. The order follows the facts found by the court, and is limited to processes and formulas of manufacture re-

ferred to in such findings, and it must be construed with reference to them. So construed, the objection to the order is not well taken.

It was not error for the trial court to reserve jurisdiction for the purpose of an accounting as to damages, if any.

Order affirmed.