THE KELLY MANUFACTURING COMPANY et al. v. HOWARD
G. BROWER et al.

Middle Section. August 29, 1925.

Certiorari denied by Supreme Court December 12, 1925.

1. **Courts. Jurisdiction. Courts of United States have exclusive jurisdiction in cases arising under patent laws of the United States.**
    The jurisdiction of all cases arising under patents is in the United States Courts exclusive of the courts of the several states.

2. **Courts. Jurisdiction. State court has jurisdiction of injunction suit to restrain disclosing trade secret.**
    Action to enjoin the use or disclosure of a trade secret is not an action based upon patent rights and state courts have jurisdiction of the cause.

3. **Injunction. Trade secrets. Injunction will lie to prevent employee disclosing a trade secret.**
    Owner has property value in trade secret which a court of chancery will protect against one who in violation of contract or by breach of confidence undertakes to apply to his own use or disclose to third person.

4. **Injunction. Trade secret. An agent hired to sell a machine may be enjoined from disclosing or using the trade secret where he becomes aware of trade secret solely because of his employment.**
    Where agent is hired to sell machine which was a trade secret and it became necessary for him, in order to sell the machine, to become familiar with the secret and he would not otherwise have known it, held he will not be permitted to make use of this knowledge for his own use or disclose it to third persons.

5. **Master and servant. Trade secret. Servant accepting employment knowing his master is trying to keep trade secret impliedly agrees not to disclose the trade secret.**
    A person employed by one using a secret and possessed with the knowledge that employer was trying to keep his secret, impliedly agrees not to divulge the secret and may be enjoined from divulging or using the same to the injury of his employer.

Appeal from Chancery Court, Hamilton County; Hon. W. B. Garvin, Chancellor.

Affirmed.

Jno. L. Spurlock and Brown and Spurlock, all of Chattanooga, for appellant.

Sizer, Chambliss and Chambliss, of Chattanooga, for appellee.

DeWITT, J. The complainants as the owners of a certain invention known as McKinney Soap and Water Mixer, filed the bill in this cause against defendants Brower, Warner and Piper to enjoin them from certain acts alleged to constitute unfair competition and a violation of the rights of the complainants in their invention. The McKinney Soap and Water Mixer is an original invention

of McKinney and Cheney and all rights therein are owned by the complainant corporation and McKinney and Cheney. In August, 1922, they applied for a patent thereon, and since the institution of the suit the patent has been granted under the laws of the United States. The invention was not only very novel, but it met immediately with great favor as soon as it was placed on the market, and complainants have sold large numbers of the machines at a handsome profit, and have contracts subsisting under which they are to furnish a very considerable number of the machines for a number of years to come. This machine is a device for the economical mixture of soap and water, especially useful in hotels, resturants and garages. The working principle is by a valve controlled by a key which turns on a dial regulating the amount of soap introduced into the water. The water passes from hot and cold water pipes into the mixer, which is in the shape of a drum having a perforated inside drum and containing the soap. This is inclosed in a larger drum, into which the water is introduced. The working of the valve by the key may be made by any one of four adjustments so as to afford four different mixtures. The mixture passes from the outer drum and through the faucet.

In the autumn of 1922 and thereafter the complainants, holding this device as a trade secret while application for patent was pending, were engaged in manufacturing and selling the machines. The nature of the device could be ascertained by taking the machine to pieces and upon careful examination, but while it was open to the public to do this, there is no evidence that any persons other than the defendants Brower, Warner and one Corey undertook to examine the nature of the machine. Early in the year 1923 defendant Brower, then a salesman of other articles, was told by Dr. Goodloe, who had an interest in this machine, that he would like to have him become associated with the owners and manufacturers as salesman. Brower knew nothing whatever of this invention, according to his own admission. He had never seen one of these mixers until he went to the shop to examine them at the request of Dr. Goodloe. There he acquired, by close examination, an intimate knowledge of the principle of the invention and the method of construction, by seeing the machines made or assembled, and operated. By this examination he acquired a better knowledge of the same than one would likely acquire otherwise. Dr. Goodloe says that Brower had a knowledge of every part of the machine, would talk about it, the sale of it, and would go over the parts, and he was there in the factory where it was being made, every part of it, seeing it, showing it to people and demonstrating it to prospective customers. This is not denied. The result of this association was that Brower entered into a contract with complainants about

February 1, 1923, as salesman of the machines, for compensation either by commission on the selling price, or by purchasing each machine for $6 and selling the same for $20. As to this the evidence leaves one in doubt, but the arrangement was that Brower should enter the service of complainants as salesman. He continued in said service until about May 1, 1923, when after some disagreement about the method of selling the machines, he left the service in a state of some resentment saying,

> "He had no kick coming, he had learned enough that would be of benefit to him thereafter, they would in the future see some more soap mixing machines, there would be a number of them on the market,"

or words to that effect, as the witness Goodloe says. Sometime thereafter he and his co-defendant Warner began to manufacture and offer for sale another soap and water mixer working upon the same principle but producing only one mixture which was the same as what is known as the number three mixture produced by the machine of complainants. It is claimed by defendants that their machine is simpler in construction and operation, eliminating a spring on the other machine and being more strong and firm; but as aforesaid the whole principle of construction and operation is the same as that of the machine of complainants.

Application for patent on this machine of defendants was made in August, 1923, but there is no evidence of any action on said application. Soon after defendant Brower made his contract with complainants for sale of their machines, he installed them in the Patten Hotel and the Read House in Chattanooga, and in other places. On February 6, 1923, he obtained from the steward of the Patten Hotel a letter of recommendation of the McKinney Soap and Water Mixer, and on November 1, 1923, he, with the permission of the signer, changed said letter by substituting the name "Brower Soap Mixer" therein for the name of the "McKinney Soap and Water Mixer," and used said letter with others in circulars advertising his machine to the trade. When he left the service of complainants he turned over to them the testimonials in his hands. One of these was from D. S. Etheridge Company, and he used a testimonial of D. S. Etheridge Company in his circular advertising the Brower Soap Mixer; but whether or not this testimonial was the same as the previous letter recommending the McKinney machine with the substitution of the name, does not appear. Brower alleges that he got the idea for his machine from the alleged defects in the complainants' machine, but certain of these alleged defects were cured by the complainants. The defendants were manufacturing and selling their machines until they were enjoined therefrom in this cause. The complainants claim that defendant's machine is

a crude and cheap imitation of their machine and the manufacture and sale of it is a flagrant violation of their rights and constitutes irreparable injury to their business which cannot be adequately compensated in damages; as defendants are of little, if any, financial responsibility, and a judgment against them for any considerable sum could not be collected. Defendants deny that they are engaged in any effort to make a fraudulent or unlawful use of any knowledge acquired by said Brower while in the employ of said complainants, or that they are representing to the public that their machines are made by the same company as those manufactured and sold by complainants. It appears that in October, 1923, defendant Piper solicited the City Garage and Auto Laundry in Cincinnati to purchase what he called a later model of the soap and water mixer of complainants, which was made by the same company which manufactured and installed one of complainants' mixers in the place of business of the said City Garage and Auto Laundry, and he offered it at less than half the price of complainants' mixers; that he stated that he had already installed in the city of Cincinnati several machines of this later model because persons were having trouble with the old mixers, and he was ready to replace the old mixers with those of the later model; that acting upon these representations the representative of the City Garage and Auto Laundry permitted Piper to replace the old mixer with that of the later model. Defendants insist that they did not authorize Piper to make these representations and that he made them through mistake. It appears further that in June, 1923, the Green Oil Soap Company of Chicago, Illinois, received a letter written on the letterhead of Lookout Mountain Chemical Company, signed "Howard Brower, Manager" dated June 9, 1923, advising the Green Oil Soap Company that they were sending to it without charge a sample of their soap mixer, setting forth the alleged improvements over the old mixer and stating that this mixer has the adjustment of number three on the old mixer; that if they would study the mixers they would find that this adjustment is the only one that is practical, and is the only one that gives satisfaction; that after having a continuous adjustment it is very difficult to turn the disc; that scientifically it may be correct, but practically it is not—and other alleged improvements. It was stated that this new mixer has given far better satisfaction to all of the users they had exchanged with; that it was offered for sale and that it was being patented with the "U" which belonged to the writers of the letter.

As aforesaid, Brower admitted in his deposition that prior to the time he went to see complainant Cheney and agreed with him for the arrangement of the sale of the McKinney mixers, he had never seen one of these mixers before; that the principle of the two mixers

is the same, because both use water pressure to spray water on the soap in the soap container. Brower says that he had seen a fruit can with perforated holes in it which had been sold in the Woolworth stores and used in hotels, but it is evident that his real knowledge of such an invention and his interest in the same arose through his connection with complainants, and his careful study and investigation of the machines in the factory of complainants.

Upon the hearing the chancellor enjoined defendant Brower from making any use of the knowledge he acquired while in the employment of complainants of the construction of the machines made under the invention owned by complainants and from making machines using or infringing upon complainants' said invention; but it being admitted on the hearing that the application for patent on the said machine had been granted and the patent issued thereon since the institution of the suit, the chancellor held that his court was without jurisdiction further to determine the rights of complainants in that regard. He further enjoined the defendants from representing that the machines made and sold by them were made in accordance with complainants' invention or their authority, and from using in their advertisement of the machines sold by them any copy of a letter written by the steward of the Patten Hotel under date of February 8, 1923, of and concerning the machines made by the complainants. From this decree the defendants have appealed and assigned errors.

The first assignment of error is to the injunction restraining defendants from making any use of any knowledge acquired while in the employ of complainants, of the construction of the machines made under their invention, and from making any machines infringing thereon—because an applicant for patent under the laws of the United States has no rights in his alleged invention of which a court can take cognizance until the application has been examined and allowed and a patent thereon has been issued; because the courts of the United States have exclusive jurisdiction of all cases arising under the patent right laws of the United States; because even had Brower been employed by complainants to work on their invention, this would not have disqualified him from using any knowledge so acquired in inventing improvements on the machines; and because Brower was never employed to work on complainants' invention, but only licensed to sell their machines after application for patent had been filed and machines put on the market. It is true that under the Federal Judicial Code the jurisdiction vested in the courts of the United States of all cases arising under the patent right laws of the United States is exclusive of the courts of the several states; but this is not an action based upon a patent right, for infringement of such right, neither do the com-

plainants seek to appropriate any title to, or benefits from, the machine of the defendants. This suit is based upon the alleged acts of defendant Brower and those seeking benefits therefrom in making disclosure or use of trade secrets communicated to Brower in the course of a confidential employment. It is well settled, under the authority of a vast number of English and American cases that courts of equity, if the facts warrant, will restrain an employee from making such disclosure, or use, of trade secrets; that the duty of the employee not to disclose such secrets may arise from an express contract, or it may be implied from confidential relations. Where confidence is imposed and the employee by reason of the confidential relation has acquired knowledge of trade secrets, he will not be permitted to make disclosure of these secrets to others to the prejudice of his employer. 18 R. C. L., page 501.

It is clear that Brower was not employed by complainants to work on their invention, but was employed to sell the machines which were a novelty; but by reason of the novel character of the machines it evidently was necessary that Brower become fully acquainted with the machine, the principle of its operation, the character of its construction and the material of its parts. He acquired this knowledge solely by reason of his relation to the complainants as salesman. Unquestionably he would never have been employed by complainants had they known of, or anticipated, the course which he afterwards pursued; and as he knew that an application for patent was pending he must have realized how vital it was to complainants that all of his knowledge of the machines should be kept secret by him. The trade secret was a valuable property of complainants. Under such circumstances any one else examining the machines might be entitled to the use of the knowledge thus acquired, but this right is denied to one who so gained the knowledge under a special or confidential relation. The owner of a meritorious discovery or invention whether patented or not, is entitled to this protection against one who has sustained such a relation. It is based upon the violation of trust and confidence. 32 C. J. 157; Peabody v. Norfolk, 98 Mass., 452, 96 Am. Dec., 664. In this case, a leading authority upon the subject and relied upon by the chancellor, it was held especially upon the authority of English cases, that if one invents or discovers and keeps secret a process of manufacture, whether a proper subject for a patent or not, he has indeed no exclusive right to it against the public, or as against those who in good faith acquired knowledge of it; but he has a property value in it which a court of chancery will protect against one who in violation of contract, and by breach of confidence undertakes to apply it to his own use, or disclose it to third persons. Later cases especially applicable are: Vulcan Detinning Company v. American

Bank, 62 Atl., 881; Wireless Specialty Apparatus Company v. Mica Condenser Company (Mass.), 131 N. E., 307, 16 A. L. R., 1170; E. I. Dupont de Nemours Powder Co. v. Masland, 244 U. S., 100, 61 L. Ed., 1016; Pratt v. Paris Gas Light and Coke Co., 168 U. S., 257, 42 L. Ed., 458; Gossard Co. v. Crosby, 132 Iowa, 155, 109 N. W., 483, 6 L. R. A. (N. S.), 1115; Elaterite Paint and Mfg. Co. v. Frost, 105 Minn., 239, 117 N. W., 388; Westervelt v. National Paper and S. Company, 154 Ind., 673, 57 N. E., 552.

In 26 Cyc., 1021 the rule is succinctly stated, that a person employed by one using a secret process with knowledge that the employer was trying to keep his secret, impliedly agrees not to divulge the secret and may be enjoined from divulging or using the same to the injury of his employer.

The cases cited by appellants go mainly in support of the proposition that the court has no jurisdiction to deal with a patent right, or that the employee had a right to an invention made by him by use of skill or knowledge acquired in the service of his employer. As aforesaid, this action is not based upon a patent right, but upon the abuse of confidence in the use of a trade secret. The cases in support of the right of the employee to an invention so made by him are to be interpreted strictly in the light of the facts of each case. In some of them it appears that there was some understanding that the employee might so use such skill or knowledge, in others it appears that the employee already had a high degree of skill or knowledge and was employed by reason of his possession thereof. In the instant case it is clear that the defendant Brower had no skill or knowledge concerning the invention until he acquired it under his special relation with the complainants. To allow him thus to appropriate the whole principle of the invention and make use of it under but slightly different form, to seek to sell his machine to the very patrons of the complainants and to make use of testimonials which he had acquired only under his employment, substituting the name of his concern for that of complainants', would be to sanction a breach of trust and confidence and a violation of duty which would be a fraud upon the rights of complainants. It is true that an employee, upon quitting the service of his employer, may use skill acquired—experience, competency, efficiency—elsewhere in selling goods, but this rule refers to such qualities in a general sense and does not extend to the use of knowledge or skill of a particular character wholly acquired under a confidential relation. Gossard v. Crosby, supra; Clark Paper Mfg. Co. v. Stenacher, 236 N. Y., 312, 140 N. E., 708, 29 A. L. R., 1325; Taylor Iron and Steel Co. v. Nichols, 73 N. J. Eq., 684, 69 Atl., 186, 133 A. S. R., 753, 24 L. R. A., N. S., 933; Wiggins Sons Co. v. Cott-A-Lap Co., 169 Fed., 150.

It is argued that the effect of the chancellor's decree is to prevent defendants from pressing their claim for a patent upon their machine; and that the court has no jurisdiction to grant such an injunction. In this case we are not dealing with the right of defendants to apply for a patent, except in so far as it may be interfered with by a denial of their basic right to use their skill and knowledge so acquired. The grant or denial of a patent is solely vested in the officials of the United States Government and they may, or may not, know whether or not the applicant is entitled to make application for the patent. It may be that the effect of the chancellor's decree would be to prevent the defendants from using a patent should they obtain it; but their very ability to apply for a patent grows out of a breach of trust and confidence, which is cognizable in a court of equity of the State. We do not deal with the patentability of the device. On the other hand, there are many decisions holding that where an employee has actually obtained a patent as the result of skill and knowledge acquired in a confidential relation and by a breach thereof, the patent is the property of his employer and the employee has been enjoined to assign the patent to the employer. Wireless Specialty Apparatus Co. v. Mica Condenser Co., 131 N. E., 307, 16 A. L. R., 1176, and cases therein cited, and in the notes thereto.

In view of these facts and principles the first assignment of error is overruled:

The second assignment of error is that the chancellor erred in restraining the defendants from representing that machines made by them were made in accordance with complainants' invention, and from using the letter of the steward of the Hotel Patten commending their machines—because the court had no jurisdiction to grant any relief in the case; because the defendants were not representing that their machine was made under complainants' patent, but had applied for a patent on another and different machine which they were advertising as their own.

For the reasons heretofore set forth we hold that the court did have jurisdiction to grant relief as to the representations made by defendants. While they were somewhat meager, we think that they were sufficient to justify the injunction in this regard. The defendant Piper did unquestionably represent to the parties in Cincinnati that the new machine with which he was trying to replace the old ones was that of the complainants. The letter of Brower as manager to the Green Oil Soap Company was sufficiently ambiguous to create the impression that his machine was the same as that of complainants, with certain improvements. The letter of the steward of the Hotel Patten with the substituted name, was sent out by defendants; but it must be remembered that this identical letter with

the exception of the name had been extensively used by the defendant Brower while in the service of complainants and while advertising their machines. It was evidently intended to be used among the former customers and might make the impression upon them that he was selling the old machine improved, which machine had already become very well known to the trade and had an established good standing and considerable patronage. We think therefore, that these acts of the defendants were wrongful and that the chancellor did not err in enjoining them, and therefore the second assiggnment of error is overruled.

The third assignment of error is a general one that the chancellor erred for reasons given in the previous assignment in not dismissing the bill and not taxing the complainants with the costs of the case. This assignment is, for reasons already given, overruled.

Upon the whole we are entirely satisfied with the decree of the chancellor and it is affirmed. The costs of this appeal will be adjudged against the appellants and the surety on their cost bond.

Faw, P. J., and Crownover, J., concur.