HICKORY SPECIALTIES, INC., and
Griffith Laboratories, Inc.,
Plaintiffs-Appellants,

v.

B & L LABORATORIES, INC., and
Charles Ledford,
Defendants-Appellees.

Court of Appeals of Tennessee,
Eastern Section.

July 6, 1979.

Rehearing Denied Aug. 9, 1979.

Permission to Appeal Denied by Supreme
Court Dec. 27, 1979.

**584**

Jay S. Bowen and J. Andrew Goddard of Bass, Berry & Sims, Nashville, for plaintiffs-appellants.

William T. Conner of Looney, Looney & Conner, Crossville, for defendants-appellees.

## OPINION

FRANKS, Judge.

This is a suit for an injunction to protect alleged trade secrets from improper use by a former employee.

Following an evidentiary hearing, the Chancellor, without a jury, refused to issue an injunction and, in the course of his ruling, stated: "I am not satisfied, and my view of the matter is that the Plaintiffs have not made out their case by a greater weight of the proof, and that the Plaintiffs are not entitled to an injunction, temporary or otherwise, against the Defendants to effectively prevent the Defendants from undertaking to enter into the liquid smoke business." Plaintiffs have appealed.

Hickory Specialties, Inc., is a manufacturer of a product known as "liquid smoke" which is applied to meat products to impart smoke flavoring and color. Due to environmental and health problems associated with the traditional smoking process, the demand for liquid smoke has increased dramatically in recent years.

The president of Hickory Specialties, Don Crace, developed his particular method of manufacturing hickory smoke by experimentation over a period of years. The co-plaintiff, Griffith Laboratories, Inc., developed a somewhat different process which has been patented. Hickory Specialties manufactures liquid smoke by its own process and also under contract with Griffith by Griffith's process. According to the testimony, each process has unique features and there are only two other commercial manufacturers of liquid smoke in the United States, each apparently using a somewhat distinct process to manufacture the finished product.

Hickory produces several varieties of liquid smoke, varying the emphasis upon color and flavor in accordance with the desires of particular customers. These varieties are produced by altering the balance between temperature, airflow and moisture in the sawdust used in the manufacturing process. Crace testified that the parameters or range of values for each of these variables used to produce a certain grade of liquid smoke are trade secrets. Hickory has devised a process for the disposal of the tar by-product from the manufacturing process which is unique in industry and of considerable economic value, which it classifies as a trade secret.

The Griffith method uses a device called a "calciner". The temperature, air and moisture parameters of that process and the method of maintaining airflow and temperature control are also alleged to be trade secrets.

Defendant, Ledford, is a principal in B & L Laboratories, a newly-formed corporation which proposes to manufacture liquid smoke commercially. Prior to entering into this venture, Ledford was employed by Hickory Specialties, first as a supervisor of its bottling operation and later as plant manager. In the latter capacity, he acquired a thorough working knowledge of all the processes regarded by plaintiffs as trade secrets. Before his tenure with Hickory Specialties, which was for a period of approximately 2 years, Ledford had been employed as a mechanic, repairing and adjusting gasoline pumps for an oil company located in North Carolina.

■ The Chancellor's decree is accompanied by a presumption of correctness unless

the evidence preponderates against his findings upon which the decree is based. *T.C.A.*, § 27–303. Our review is *de novo*, however, and if we conclude the evidence preponderates against the findings of the Chancellor it is our duty to enter such decree in this court as the law and evidence warrant. *Loftis v. Stuyvesant Ins. Co.*, 54 Tenn.App. 371, 390 S.W.2d 722 (1964).

We note at the outset that a substantial amount of the material evidence is undisputed. Plaintiffs developed the respective processes for manufacturing liquid smoke by experimentation and at substantial cost. Defendant, Ledford, gained his knowledge concerning the manufacture of liquid smoke in his employment relationship with Hickory Specialties. Ledford testified as follows:

> *Q.* You didn't have any experience in making it [liquid smoke], did you?
>
> *A.* No sir, I had never made liquid smoke before, but I knew the principle of how to make it.
>
> *Q.* You're testifying that when you came to Hickory Specialties, you already knew how to make liquid smoke?
>
> *A.* No, I didn't say that. I said I knew the principle of how you make liquid smoke . . . It's just a distillation principle, and it is simple . .
>
> .     .     .     .     .
>
> *Q.* Well, you said you had knowledge of the liquid smoke process before you came to Hickory Specialties.
>
> *A.* I didn't say I had knowledge of it. I said I had knowledge of how the process was used.

It is further undisputed that Ledford made numerous photographs, sketches and notes of the equipment used in the manufacturing processes and that he intends to manufacture liquid smoke following plaintiffs' processes with slight changes and modifications.

The sharply controverted factual issue was the degree and nature of secrecy that plaintiffs imposed upon the processes they utilized in manufacturing liquid smoke.

Thus, the primary issue presented by this appeal is whether the evidence preponderates against the holding of the Chancellor, i. e., whether the evidence meets the standards for injunctive relief in trade secret cases.

The parties are in basic agreement as to the law in this jurisdiction relating to trade secrets with one exception. Defendants insist that among the standards for injunctive relief is the element of product confusion.

The leading Tennessee cases on injunctive relief against appropriation of trade secrets by former employees are *Hall v. Britton*, 41 Tenn.App. 72, 292 S.W.2d 524 (1953) and *Kelly Mfg. Co. v. Brower*, 1 Tenn.App. 428 (M.S.1925). Each of these cases involved a party who produced a product very similar to that of his former employer. In *Hall*, the products were functionally identical and the names were very similar. In *Kelly*, the former employee portrayed his product in a manner to deliberately create the misimpression that it was manufactured by the former employer. *Hall* discusses the issue thusly:

> When one is employed by another, and through that employment he obtains information of a confidential nature which enables him to manufacture a product, in competition with his employer, and of such nature as to be calculated to deceive the purchasing public, as to whose product they might be purchasing, he is under such an obligation, by virtue of his employment, that he should be restrained from performing such business to the detriment of his former employer. *Kelly Manufacturing Co. v. Brower*, 1 Tenn. App. 428; *E. I. DuPont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; *Junker v. Plummer*, 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1453; *Matarese v. Moore-McCormack Lines*, 2 Cir., 158 F.2d 631, 170 A.L.R. 449.
>
> In a suit involving a trade secret it is not always necessary to reveal the secret in order to substantiate the contention of a party, where the secrets are known to the parties because of their former confidential relationship. *E. I. DuPont de*

*Nemours Powder Co. v. Masland, supra. Elaterite Paint & Manufacturing Co. v. S. E. Frost Co.*, 105 Minn. 239, 117 N.W. 388.

To constitute unfair competition the product of defendants need not be an exact copy of complainants, but need only be so reasonably similar in appearance, use and name so as to cause an unwary purchaser to confuse the products. *C. F. Simmons Medicine Co. v. Mansfield Drug Co.*, 93 Tenn. 84, 23 S.W. 165, 41 Tenn. App. at 87, 292 S.W.2d at 530.

Similar language appears in the *Kelly* opinion and, on the basis of that language, defendants assert that product confusion is a required element for injunctive relief in a trade secret case.[1]

■ This position is not supported by other authorities, including those cases relied on in *Hall.* Neither *Masland, Junker* nor *Matarese* involved any issue of product confusion and other cases embodying the majority rule, such as *Atlantic Wool Combing Co. v. Norfolk Mills, Inc.*, 357 F.2d 866 (1st Cir. 1966) and *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir. 1953), assert that the essence of a trade secret action is the violation of the trust implied by law on the employer-employee relationship. While product confusion was an issue in the *Kelly* and *Hall* cases, it is merely another element rather than a condition precedent to invoking the aid of the courts in protecting trade secrets.

■ The elements required in an injunctive trade secrets suit are set forth in *Smith v. Dravo Corp., supra*, as the existence of a trade secret which is communicated to the defendant while the defendant is in a position of trust and confidence and use of that information by the defendant to plaintiff's detriment. The fact that the secret could have been discovered by the defendant, through his own skills and initiative, is not determinative. The issue is whether the information was actually procured through a confidential relationship.

Applying these elements to the evidence, there is no dispute that defendant Ledford's knowledge pertaining to the manufacture of liquid smoke was acquired by him during and because of his employment by plaintiffs. The process by which he proposes to create his product incorporates a number of factors from both processes used by the plaintiffs, including matters regarded as secrets. While neither plaintiff has suffered any loss of business, defendants intend to commence manufacturing liquid smoke and there is evidence that he broached the possibility with one of Griffith's agents of producing liquid smoke for Griffith in Hickory's place.

The salient issue then is whether or not the various processes claimed by plaintiffs to be trade secrets are actually trade secrets. At the trial, plaintiffs produced a number of employees who testified to the enforcement of security measures at the plant, including admonitions to employees that plant operations were not to be revealed to outsiders. "No trespassing" and other "no admittance" signs were placed at the gate and about the plant. Defendants offered witnesses emphasizing the lack of security at the plant and some employees who stated that they had never been told the plant's operations were secret. Defendants also offered evidence that many of the alleged secrets were adaptations of existing technology.

■ Trade secrets are defined in *Allis-Chalmers Mfg. Co. v. Continental Aviation & Eng. Corp.*, 255 F.Supp. 645 (E.D.Mich. 1966):

> [T]he weight of modern authority . . . holds that a trade secret may consist of any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it. [Citations omitted.] P. 653.

On the issue of secrecy, the Court continued:

> the name and packaging of the product will differ significantly from plaintiffs'.

---

1. Defendants have produced no liquid smoke and implied in their proof is the promise that

The subject matter of a trade secret must be secret. Matters of public knowledge or general knowledge in the industry or ideas which are well known or easily ascertainable, cannot be trade secrets. Similarly, matters disclosed by a marketed product cannot be secret. However, the proprietor of the business may communicate the secret to employees involved in its use, or to others pledged to secrecy. *Ibid.*

In the case *sub judice*, plaintiff, Hickory, arrived at a set of temperature, moisture and air parameters after years of trial and error experimentation. The by-product disposal method represents a creative use of existing technology. Plaintiffs' evidence establishes that both of these processes give it a competitive edge in the market and it further appears the processes are unique in the industry to plaintiffs' operation.

■ While the by-product disposal process is based on existing technology, this fact does not prevent its being a trade secret. The potential to develop the process by independent technology, affords the defendants no excuse to obtain the process through a confidential employer-employee relationship and then compete with the developer. *Franke v. Wiltschek*, 209 F.2d 493 (2d Cir. 1953); *Smith v. Dravo, supra; Atlantic Wool Combing Co. v. Norfolk Mills, supra.*

■ Since Ledford acquired his knowledge concerning the processes for manufacturing liquid smoke through his position as Hickory's plant manager, the first part of the test outlined in *Allis-Chalmers, supra*, is satisfied by the proof.

■ On the issue of actual secrecy, the evidence favorable to defendants pertaining to the security measures at the plant is that not all employees were instructed as to secrecy. The gates to the plant are unguarded; the employees do not wear badges or carry identification cards. On this basis defendants argue that a competitor could by stealth observe and copy plaintiffs' operations.

Defendants offered testimony of a number of past and present employees of Hickory who testified to their knowledge of certain aspects of the manufacturing process. Each of these persons testified that he had never been instructed that the plant's operations were secret.

Plaintiffs' evidence shows the plant is surrounded by a fence, the gate is locked each evening, and numerous signs are posted at the gate and plant indicating that only authorized personnel are permitted on the grounds.

The evidence on this issue establishes that plaintiffs took some steps to keep its operations confidential; these measures admittedly were not stringent enough to withstand a deliberate spying attempt and, while some employees were not warned to keep their knowledge of the plant's operations secret, significantly none of those employees possessed sufficient information and understanding of the process to enable him to design a plant and manufacture liquid smoke. Ledford, on the other hand, was acquainted with the entire process.

■ While absolute secrecy is not required, there must be a substantial element of secrecy so that a third person would have difficulty in acquiring the necessary information for manufacturing the product without resorting to the use of improper means of acquiring the secret. *See* 43A C.J.S. *Injunctions* § 151 Trade Secrets. We hold that plaintiffs' processes were sufficiently secret to merit protection.

■ The Chancellor, in reaching his conclusion, made reference to Ledford's mechanical abilities and the record does establish that he was an excellent mechanic. There is also evidence that there was an increase in production under his leadership and he claimed that certain vaguely described adjustments made by him improved the system's efficiency. A former employee, of course, is entitled to make use of the ideas and innovations which are products of his own ingenuity. *See Structural Dynamics Research Corp. v. Engineering Mechanics Research Corp.*, 401 F.Supp. 1102 (E.D.

Mich.1975). Defendant's evidence, however, is insufficient to establish that defendant created the process which he now seeks to apply. We conclude that the evidence preponderates against the Chancellor's decision and it was error to deny the injunctive relief requested.

The other assignment requiring consideration is the charge by the plaintiffs that the Chancellor erred in not considering the claim for damages and cite numerous authorities to the effect that damages are properly allowable in trade secret cases.

■ We conclude this assignment is without merit since, under the circumstances, injunctive relief will afford an adequate remedy. Moreover, there is no evidence in the record of any actual damages sustained by plaintiffs, and it further appears that no basis for calculating an award of damage exists since defendants have not manufactured a liquid smoke product.

Plaintiffs have developed their processes at substantial cost and have established by a preponderance of the evidence a property right and are entitled in equity to protection. An injunction will issue enjoining the defendants and their agents and representatives, successors and assigns from divulging or using any trade secrets of plaintiffs relating to the manufacture or manufacturing process, distribution or sale of liquid smoke, and defendants will be ordered to turn over to plaintiffs all photographs, drawings and other information in their possession relating to the manufacturing process, sale or distribution of liquid smoke which constitute confidential information of the plaintiffs obtained by the defendant, Ledford, while employed by plaintiffs.

The decree of the Chancellor is reversed and the costs incident to this appeal are assessed against defendants-appellees. This cause will be remanded to the trial court for enforcement of the injunction to be issued in accordance with this opinion.

PARROTT, P. J., and SANDERS, J., concur.

## OPINION ON PETITION TO REHEAR

FRANKS, Judge.

Appellees have filed a petition to rehear, pursuant to Tennessee Rules of Appellate Procedure, Rule 39.

The petition essentially reargues the preponderance of evidence issue and, since the arguments set forth in the petition are basically the same as advanced in appellees' brief and argument heretofore made, we respectfully deny the petition to rehear.

PARROTT, P. J., and SANDERS, J., concur.