# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 19, 2015 Session

## JULIAN HINSON, D/B/A TRIVIA TIME v. THOM O'ROURKE

**Appeal from the Chancery Court for Davidson County**
**No. 12-993-III     Ellen H. Lyle, Chancellor**

_____

**No. M2014-00361-COA-R3-CV – Filed August 25, 2015**

_____

Plaintiff, a sole proprietor of an entertainment business featuring trivia and bingo games, filed this action to enforce an Independent Contractor Agreement, a Noncompetition Agreement, and a Contractor Confidentiality Agreement and for violation of the Tennessee Uniform Trade Secrets Act. The defendant asserted that the covenant not to compete was unenforceable and that none of the information provided to him by Plaintiff constituted trade secrets or confidential information. The trial court dismissed all claims finding the covenant not to compete was unenforceable and that none of the information qualified as a trade secret. Following the dismissal of the claims, the defendant filed a motion for attorney's fees pursuant to the Trade Secrets Act. The trial court denied the motion finding that the claim under the Trade Secrets Act was not brought in bad faith. Both parties appeal. We affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

James G. King, Nashville, Tennessee, for the appellant, Julian Hinson d/b/a Trivia Time.

Christopher W. Cardwell and Matthew B. Haskell, Nashville, Tennessee, for the appellee, Thom O'Rourke.

## OPINION

Julian Hinson ("Plaintiff") is the sole proprietor of Trivia Time, a business that conducts live entertainment events including trivia and bingo games that are hosted by "trained staff" at restaurants, bars, and other venues. Prior to their training, Plaintiff's staff, who are referred to as "DJs," were required to enter into three agreements: a Contractor Noncompetition Agreement, an Independent Contractor Agreement, and a

Contractor Confidentiality Agreement. The noncompete agreement prohibits the DJ from "directly or indirectly conducting activity that is competitive with any of the activities Contractor conducted for Trivia Time," and extends for three years from the date of termination. The other agreements prohibit revealing and using Trivia Time's alleged trade secrets and confidential information.

In 2009, Tom O'Rourke ("Defendant") entered into all of the three agreements with Plaintiff and began working as an independent contractor hosting trivia games in Nashville venues. As for training, Plaintiff educated Defendant on how Trivia Time conducts trivia games through one-on-one meetings and on-the-job training. Plaintiff provided Defendant with a written script to be read to the audience during trivia games, but the remainder of the information was provided orally. The information included how to keep score, microphone training, use of music, methods used with the audience to heighten entertainment, and handling enforcement of the rules. Defendant worked for Plaintiff until October 26, 2011. Upon terminating his association with Trivia Time, Defendant began hosting and conducting trivia and bingo games under the name "Bartainment" in restaurants, bars, and venues that had been prior clients of Trivia Time.

On April 5, 2012, Plaintiff sent Defendant a cease-and-desist letter. When Defendant did not comply, Plaintiff filed suit against Defendant for breach of contract and violation of the Tennessee Uniform Trade Secrets Act ("Trade Secrets Act" or "the Act") for allegedly revealing and misappropriating trade secrets.

During a pretrial conference, the parties agreed that the trial court should determine issues of law pursuant to a Rule 56 of the Tennessee Rules of Civil Procedure proceeding, particularly regarding the issue of whether Trivia Time has a legitimate protectable business interest that justifies the restraints on competition provided in the parties' noncompete agreement. Pursuant to Rule 56, each party filed briefs and Statements of Undisputed Material Facts with additional exhibits. Notably, Plaintiff filed an affidavit containing an attached document titled "Confidential Methods and The Process By Which We Convey Our Trade Secrets." In this document, Plaintiff identified what he believed were the trade secrets at issue in this case.

After a hearing, the trial court entered an order dismissing Plaintiff's complaint as a matter of law for failure to establish essential elements of each of his claims. Specifically, the trial court found the noncompete agreement to be unenforceable because Defendant was not privy to confidential information or trade secrets and received no specialized training; therefore, Plaintiff did not have a legitimate protectable business interest that warranted a noncompete agreement. In so finding, the trial court determined that most of Plaintiff's information purporting to be trade secrets was readily ascertainable because it was frequently demonstrated to the public. Moreover, the trial court found that the Trade Secrets Act had not been violated because Plaintiff did not

prove the existence of a trade secret as defined by the statute, and the remaining agreements had not been breached.

After the order dismissing all of Plaintiff's claims was entered, Defendant filed a Motion for Attorney's Fees pursuant to Tenn. Code Ann. § 47-25-1705, which provides that if a claim of misappropriation of trade secrets is made in bad faith, attorney's fees may be awarded to the prevailing party. The court denied Defendant's motion, finding that the claim was plausible and that it was not brought in bad faith.

Both parties appeal. Plaintiff contends that his company can demonstrate a legitimate business interest that warrants restraint on competition because he provided specialized training and trade secrets to Defendant during the course of his employment with Trivia Time. He also contends that Defendant violated the Trade Secrets Act by misappropriating confidential information and trade secrets. Defendant contends that the trial court erred in failing to award him attorney's fees because remembered information and readily ascertainable information broadcast in public cannot be a trade secret as a matter of law, and, therefore, Plaintiff pursued his Trade Secrets Act claim in bad faith. We shall address each issue in turn.

## ANALYSIS

The issues were resolved in the trial court upon summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). The material facts with respect to the issues raised on this appeal are not in dispute; accordingly, our review is de novo on the record with no presumption of correctness as to the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d); *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).

### I. NONCOMPETE AGREEMENT

Generally, covenants not to compete are disfavored in Tennessee but will be enforced if "they are deemed reasonable under the particular circumstances." *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966); *see Baker v. Hooper*, 50 S.W.3d 463, 469 (Tenn. Ct. App. 2001). The factors that are relevant in determining whether a covenant not to compete is reasonable include "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest." *Allright Auto Parks*, 409 S.W.2d at 363.

In considering the relevant factors, "a threshold question is whether the employer has a legitimate business interest, i.e., one that is properly protectable by a non-competition covenant." *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999). "There is no legitimate interest in protection from competition, only from *unfair* competition." *Girtman & Assoc., Inc. v. St. Amour*, No. M2005-00936-COA-R3-CV, 2007 WL 1241255, at *6 (Tenn. Ct. App. Apr. 27, 2007) (citing *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 678 (Tenn. 2005) (emphasis added).

Thus, we must determine whether the employer in this case has a legitimate business interest that is protectable by the noncompete agreement at issue. If the employer has such a legitimate business interest, we must then analyze whether the noncompete agreement is reasonable and enforceable under the circumstances of this case. If the employer does not have a legitimate business interest, then the noncompete agreement is unenforceable under Tennessee law. *See Corbin v. Tom Lange Co.*, No. M2002-01162-COA-R3-CV, 2003 WL 22843167, at *6 (Tenn. Ct. App. Dec. 1, 2003).

In order to establish a protectable business interest, the employer must show "special facts present over and above ordinary competition." *Hasty v. Rent–A–Driver, Inc.*, 671 S.W.2d 471, 473 (Tenn. 1984). These facts must be such that without the covenant, the employee would gain an unfair advantage in future competition with the employer. *Id.* Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employee had such repeated contact with the employer's customers that the customers would tend to see the employee as the "face" of the company. *See id.*; *Vantage*, 17 S.W.3d at 644. These considerations may operate individually or in tandem to give rise to a properly protectable business interest. *Vantage*, 17 S.W.3d at 644. Here, Plaintiff asserts that Defendant was given specialized training, access to trade secrets, and that Defendant was the "face" of Trivia Time to its customers.

As to training, an employer does not have a protectable interest in the general knowledge and skill of an employee. *Hasty*, 671 S.W.2d at 473. The court must distinguish between "the general skills and knowledge of the trade and information that is peculiar to the employer's business." *Selox, Inc. v. Ford*, 675 S.W.2d 474, 476 (Tenn. 1984) (quoting Restatement (Second) of Contracts § 188 cmt. g). They must determine "whether the skill acquired as a result of that training is sufficiently special as to make a competing use of it by the employee unfair." *Vantage*, 17 S.W.3d at 645.

An employer has a legitimate business interest in keeping its former employees from using the former employer's trade secrets or other confidential information in competition against the former employer. *Id.* (citing *Hasty*, 671 S.W.2d at 473). Our courts have stated that a trade secret consists of any formula, process, pattern, device, or

- 4 -

compilation of information that is used in one's business to gain an advantage over competitors who do not use it. *Hickory Specialties, Inc. v. B & L Labs., Inc*., 592 S.W.2d 583, 586 (Tenn. Ct. App. 1979). The subject matter of a trade secret must be secret and not well known or easily ascertainable. *Id.* at 587. [1] Confidential information, like trade secrets, does not include information that is generally available in the trade or easily available from sources other than the employer, such as customer lists, knowledge of the buying habits and needs of particular clients, pricing information, and profit and loss statements. *Amarr Co. v. Depew*, C/A No. 03A01-9511-CH-00412, 1996 WL 600330, *4-5 (Tenn. Ct. App. Oct. 16, 1996); *see also Vantage*, 17 S.W.3d at 645.

Further, an employer may have a legitimate protectable interest in the relationships between its employees and its customers when the customer associates the employer's business with the employee due to the employee's repeated contacts with the customer. *See Hasty*, 671 S.W.2d at 473; *see also Vantage*, 17 S.W.3d at 645. In the customer's eyes, the employee must become the "face" of the employer. *Vantage*, 17 S.W.3d at 645.

Plaintiff contends that the noncompete agreement is enforceable because Defendant received specialized training, access to trade secrets, and because he was the "face" of the company to its customers. It is undisputed that Defendant's training consisted of some one-on-one meetings and on-the-job training in which Plaintiff provided Defendant with oral information to teach the way that Trivia Time conducts trivia games. In fact, Plaintiff admits that the only written material provided to Defendant included a script to explain the game to the audience. It is further undisputed that the information provided to Defendant during training included scorekeeping, microphone training, use of music, handling the enforcement of the rules, and methods and tricks used

---

[1] In 2000, the General Assembly passed the Uniform Trade Secrets Act, which includes a statutory definition for "trade secret" that we will discuss in greater detail later in this opinion. *See* Tenn. Code Ann. § 47-25-1702(4). Although the Act "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret," it does not preempt claims based on "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret . . . ." *See* Tenn. Code Ann. § 47-25-1708(a)-(b). Accordingly, Plaintiff's claims related to the violation of the noncompete agreement are not preempted by the Act because they are based on a contractual remedy. *See id.*; *see also* Douglas F. Halijan, *The Past, Present, and Future of Trade Secrets Law in Tennessee: A Practitioner's Guide Following the Enactment of the Uniform Trade Secrets Act*, 32 U. Mem. L. Rev. 1, 33 (2001) (arguing that, based on the language of Tenn. Code Ann. § 47-25-1708(b), "misappropriation under the [Act] is a completely separate and independent cause of action from a claim to enforce a covenant not to compete in the employment context . . . ."). Although the claims related to the noncompete agreement are not preempted by the Act, the question remains whether the statutory definition of "trade secret" has displaced the common law definition with respect to claims that are not brought under the Act. We do not have to answer that question here because both the statutory and common law definitions are very similar, and information that is "generally known" or "readily ascertainable by proper means" does not qualify as a "trade secret" under either of them. *See* Tenn. Code Ann. § 47-25-1702(4)(A); *Hickory Specialties, Inc. v. B & L Labs., Inc*., 592 S.W.2d 583, 586 (Tenn. Ct. App. 1979).'

with the audience to heighten entertainment value through humor and suspense. He submits that some of this information could be easily ascertained by the audience, but asserts that his company's methods for heightening entertainment and enforcement of the rules could not. Plaintiff contends that this information constitutes trade secrets and establishes that he provided specialized training.

The trial court concluded, based upon the undisputed facts, that Plaintiff failed to demonstrate the essential element of the existence of unfair competition. Specifically, the trial court found that "[m]ost of Plaintiff's information, including the purported trade secret methods of heightening entertainment, is not difficult to acquire and is readily ascertainable as it is used, stated and demonstrated publicly to audiences and could be duplicated by anyone who repeatedly attended and observed the events." The trial court further found that "[m]uch of the information and training are general DJ skills and knowledge of this industry and other audience interactive industries, including the purported trade secret methods used with the audience." In fact, Plaintiff acknowledged that training for general trivia hosting is widely available through other sources, including online, and that the information provided to his staff is repeatedly demonstrated in front of a live audience. He further acknowledged that some of this information could be easily ascertained by the audience, including, *inter alia*, the game's material and format, questions read out loud, and music played.

As we noted above, specialized training cannot include general skills and knowledge of the trade, *Selox, Inc.*, 675 S.W.2d at 476, and trade secrets cannot be easily ascertainable or generally available in the trade, *Hickory Specialties, Inc.*, 592 S.W.2d at 586. *See* Tenn. Code Ann. § 47-25-1702(4). Thus, it is significant that the information Plaintiff provided to Defendant is frequently demonstrated to the public, that the information could be easily ascertained by the public, and that trivia host training is available through other sources. Therefore, the record supports the trial court's conclusion that Defendant did not receive specialized training or gain access to trade secrets.

The trial court also found that Plaintiff failed to present evidence that Defendant had special relationships with Trivia Time's customers. In his brief, Plaintiff merely states that Defendant provided services at various venues while working for Trivia Time, and that he began hosting his own trivia games at several of these locations; however, there is no evidence in the record to support a finding that Defendant was the "face" of Plaintiff's business in any respect.

For the above reasons, we affirm the trial court's ruling that the noncompetition agreement is unenforceable.

## II. TENNESSEE UNIFORM TRADE SECRETS ACT

In 2000, Tennessee enacted the Trade Secrets Act which "preempts and displaces conflicting or inconsistent common law in Tennessee regarding the misappropriation of trade secrets." Douglas F. Halijan*, The Past, Present, and Future of Trade Secrets Law in Tennessee: A Practitioner's Guide Following the Enactment of the Uniform Trade Secrets Act*, 32 U. Mem. L. Rev. 1, 5 (2001) (citing Tenn. Code Ann. § 47-25-1708(a) (Supp. 2000)). The Act provides that a plaintiff may obtain an injunction and/or an award of damages for misappropriation of a "trade secret" as defined by the Act. Tenn. Code Ann. § 47-25-1703 and § 47-25-1704. The term "trade secret" has a statutory definition that is similar to the common law definition:

> [I]nformation, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy

Tenn. Code Ann. § 47-25-1702(4) (2001). The General Assembly adopted a broader definition of "trade secrets" than that found in the national uniform act. Specifically, "Tennessee's definition of 'trade secret' includes any information 'without regard to form, including, but not limited to, technical, nontechnical or financial data.'" Halijan, *supra*, at 21. Thus, Tennessee's definition of a "trade secret" under the Act is more expansive than the standard version of the Uniform Trade Secret Act, and it "is sufficiently broad to include information which at common law would have been considered confidential information." *Id*. at 14.

The trial court found that the information provided to Defendant did not include "trade secrets" as defined by the Act because the information is readily ascertainable since it is demonstrated in front of a public audience, and the information is general knowledge known within the industry. Based on this determination, the trial court ruled that "there has been no violation of use or dissemination of confidential information and/or trade secrets precluded by . . . the Tennessee Uniform Trade Secrets Act." We affirm this ruling.

### III. ATTORNEY'S FEES UNDER THE TENNESSEE TRADE SECRETS ACT

Defendant filed a motion to recover the attorney's fees he incurred in defending the claims brought pursuant to the Tennessee Trade Secrets Act, specifically Tenn. Code

Ann. § 47-25-1705. The Act states that "the court may award reasonable attorney's fees to the prevailing party" if a claim of misappropriation of trade secrets is made in *bad faith*. Tenn. Code Ann. § 47-25-1705 (emphasis added). The trial court found that the claim was not brought in bad faith and denied the motion for fees. Defendant contends this was error, maintaining that Plaintiff recklessly pursued this claim in bad faith because neither easily ascertainable information nor remembered information can be considered a trade secret under Tennessee law.

The trial court found that the record did not establish either a bad motive or a complete lack of evidentiary proof. Specifically, the trial court found that "a reasonable inference from the record is that Plaintiff believed that the evidence was plausible to support a trade secrets violation," and that Plaintiff provided evidence that he believed established the existence of trade secrets, acknowledging the fact that Plaintiff filed a document providing a detailed explanation of the evidence he believed were trade secrets. While Defendant disagreed, contending that that the information was not confidential and merely amounted to remembered information that could not be a trade secret, the trial court found that a disagreement on the law does not constitute bad faith.

In finding that the claim was not brought in bad faith, the trial court analyzed the particular facts of this case under a two-part test adopted by several federal district courts, which is outlined as follows in *Wyndham Vacation Resorts, Inc. v. Wesley Fin. Grp., LLC*, No. 3:12-CV-559, 2013 WL 785938, at *11 (M.D. Tenn. Feb. 28, 2013):

> An award of attorneys' fees and expenses under this section requires a finding of subjective bad faith. Tennessee has not defined "bad faith" under the attorneys' fees provision, but "other States have concluded . . . that bad faith 'requires objective speciousness of the plaintiff's claim . . . and . . . subjective bad faith in bringing or maintaining the claim.'" *Degussa Admixtures, Inc. v. Burnett*, 277 Fed. Appx. 530, 534 (6th Cir. 2008) (affirming the district court's award of attorneys' fees to the prevailing party when the plaintiff failed to establish more than the existence of generalized trade secrets and the employee's knowledge of them); *see also Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, No. 110CV450, 2012 WL 2524008, at *9 (W.D. Mich. June 29, 2012) ("'[a] party alleging trade secret misappropriation must particularize and identify the purportedly misappropriated trade secrets with specificity.'"). *But see McKesson Medical–Surgical, Inc. v. Micro Bio–Medics, Inc.*, 266 F.Supp.2d 590, 597 (E.D. Mich. 2003) (denying defendant's request for attorneys' fees because no clear evidence that Plaintiffs took action for improper purposes amounting to bad faith).

The trial court also analyzed other jurisdictions that have adopted the attorney's fee provision of the Uniform Trade Secrets Act, and found that all of the cases discussing

"bad faith" fell into two broad categories: (1) cases where the bad faith was evidenced by a bad motive; and (2) cases where the bad faith was evidenced by a complete lack of evidentiary proof from the party suing under the Uniform Trade Secrets Act. The trial court concluded that the record did not establish either a bad motive or a complete lack of evidentiary proof. Specifically, the trial court found that "a reasonable inference from the record is that Plaintiff believed that the evidence was plausible to support a trade secrets violation," and that Plaintiff provided evidence that he believed established the existence of trade secrets.

This court recently defined "bad faith" as it applies to a Trade Secrets Act claim, finding that "[b]ad faith is defined [by Black's Law Dictionary] as 'dishonesty of belief or purpose,'" and that a claim brought under the Act that is "plausible" is not considered to have been brought in bad faith for the purpose of awarding attorney's fees under the statute. *Dominion Enterprises v. Dataium, LLC*, No. M2012-02385-COA-R3-CV, 2013 WL 6858266, at *13-14 (Tenn. Ct. App. Dec. 27, 2013) (Trial court denied an award of attorney's fees, finding that "though the claim was not strong, it was plausible."). The trial court here considered the relevant and undisputed facts, finding no sufficient basis of "bad faith" in this case to support an award of attorney's fees pursuant to the Act. Moreover, the court acknowledged that the dispute between the parties hinged upon the legal significance of the information identified by Plaintiff and whether it could constitute a trade secret under Tennessee law, and the trial court found that a dispute as to the law in this case did not amount to bad faith.

For the foregoing reasons, we affirm the trial court's decision to deny Defendant's motion to award attorney's fees pursuant to Tenn. Code Ann. § 47-25-1705.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed equally against Julian Hinson and Tom O'Rourke.

_____
FRANK G. CLEMENT, JR., JUDGE