**SELOX, INC., Plaintiff-Appellee,**

v.

**Lucky J. FORD, Defendant-Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Sept. 4, 1984.

Michael E. Richardson, Chattanooga, for defendant-appellant; Gearheiser, Peters & Horton, Chattanooga, of counsel.

Richard P. Jahn, Sr., Harold L. North, Jr., Chattanooga, for plaintiff-appellee.

## OPINION

BROCK, Justice.

Plaintiff, Selox, Inc., brought this action against Lucky J. Ford, its former employee, to enjoin Ford from continuing his employment with Proweld, Inc., a Chattanooga business concern which competes to some extent with the plaintiff. Selox alleged that Ford's continued employment with Proweld was in violation of a non-competition covenant which he had made during his employment with the plaintiff. The case was heard orally before the Chancellor upon an application for a temporary restraining order and the Chancellor concluded that a restraining order should be denied upon the ground that the non-competition covenant was invalid as hereinafter discussed. The plaintiff appealed to the Court of Appeals which, in a two-to-one decision, Presiding Judge Parrott dissenting, reversed the decision of the Chancellor and issued the injunction as prayed. We granted discretionary review.

Upon the authority of *Kaset v. Combs,* Tenn.App., 434 S.W.2d 838 (1968); *Allright Auto Parts, Inc. v. Berry,* 219 Tenn. 280, 409 S.W.2d 361 (1966); *Hasty v. Rent-A-Driver, Inc.,* Tenn., 671 S.W.2d 471 (1984); Restatement (Second) of Contracts § 188 (1981); 42 Am.Jur.2d *Injunctions* § 115 (1969), we reverse the judgment of the Court of Appeals and affirm the decree of the Chancellor dismissing the complaint.

Selox employed Ford as a salesman of its industrial gases and welding products in the Chattanooga area on June 12, 1978, and he continued that employment until April 19, 1982. It was not until August 20, 1980, that Selox required Ford to enter into the non-competition covenant which provided that in the event of a termination of Ford's employment with Selox for any reason he would not compete with Selox for a period of two years from and after the date of his termination within the "branch territory of Selox, Inc. serviced out of the office of Selox, Inc. out of which employee shall be working at the time of such termination." This agreement also required that Ford would keep confidential all data as to "pricing, customer lists, company policy and procedures disclosed previously or hereafter to an employee by Selox Company, Inc."

Before being employed by Selox, Ford had held other positions in which he gained

technical knowledge in this particular industry. Thus, he had previously worked as a quality control manager, a shop supervisor, a vendor quality assurance representative and a non-destructive evaluation technician. He was also trained as a welder, and had training in radiographic testing, ultrasonic testing, liquid penetration testing and magnetic particle testing. Notably, however, he had not, prior to being employed by Selox, served as a sales representative for any business organization.

When Ford first began working for Selox he was initially assigned to run an existing route with another sales representative and his training consisted of going on the sales route with another salesman whose territory he was to take over. Eventually Ford took over the existing customer sales route which consisted primarily of Tennessee Valley Authority accounts. He had no other training except attendance at weekly sales meetings which the learned Chancellor considered to be of little value.

Ford's duties required him to call upon established customers and potential customers in an effort to sell industrial gases and welding supplies for Selox. Selox manufactures industrial gases but acquires the welding supplies which it sells from other manufacturers. Selox fixes its own prices for its industrial gases but the prices of the welding supplies which it sells are determined by reference to the manufacturer's published price lists. Ford's new employer, Proweld, Inc., does not sell industrial gases and thus is not a competitor of Selox in this respect. Moreover, Proweld, Inc., does not handle Hobart or Westinghouse welding supplies as does Selox.

Approximately two years after Ford was required to sign the non-competition agreement, Selox sent him to Westinghouse for a two day seminar after Selox had decided to "rearrange" its sales representatives' compensation package, a rearrangement which would have resulted in an annual decrease of compensation for Ford in the sum of approximately $4,000.00. It was because of this so-called "rearranging" that Ford

resigned his position with Selox and went to work for Proweld.

Both the Chancellor and the Court of Appeals have found that Ford was not possessed of any trade secrets or any other confidential information important to the well-being of Selox. The Chancellor also found that the identity of those who were in the market for purchasing welding supplies and industrial gases could be ascertained by anyone of reasonable intelligence by a mere reference to the Yellow Pages of the phone directory. The Chancellor also found that defendant Ford had been given no additional or specialized training and that the particular work done by Ford for Selox could have been performed by any other employee of average competence. The Chancellor, therefore, concluded that the hardship to Ford if the covenant were enforced against him far outweighed any benefit to Selox which might result from enforcement. He found that the employer, Selox, did not need the protection of the non-competitive agreement and thus that failure to enforce that agreement would not result in any harm to Selox. We concur in those findings.

In denying relief to an employer in the *Kaset* case, Judge McAmis, speaking for the Court, concluded:

"In the present case, while the terms of the agreement were reasonable as to time and territory, the services of defendant involved nothing of a confidential nature, i.e., no 'trade secrets' are involved and complainants' business does not reasonably require the relief sought by the bill." 434 S.W.2d at 842.

The Chancellor reached the same conclusion in the instant case and we agree. The subject covenant is invalid on at least two counts. Paraphrasing the Restatement (Second) of Contracts, § 188, it is unreasonably in restraint of trade because (1) the restraint imposed is greater than is needed to protect the employer's legitimate interest and (2) the employer's need is outweighed by the hardship to the employee and the likely injury to the public. Comment "g" to § 188 of the Restatement con-

tains the following observation with which we agree:

> "Whether the risk that the employee may do injury to the employer is sufficient to justify a promise to refrain from competition after the termination of the employment would depend on the facts of the particular case. Post-employment restraints are scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through the loss of his livelihood. This is especially so where the restraint is imposed by the employer's standardized printed form. Cf. § 208. A line must be drawn between the general skills and knowledge of the trade and information that is peculiar to the employer's business."

Equally applicable to the instant case is a portion of our recent opinion in *Hasty v. Rent-A-Driver, Inc.*, to wit:

> "Of course, any competition by a former employee may well injure the business of the employer. An employer, however, cannot by contract restrain ordinary competition. (Citation omitted.) In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. (Citation omitted.) These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer. (Citation omitted.)" 671 S.W.2d at 473.

For the reasons stated, we conclude that the non-competition covenant sought to be enforced in this case is invalid and that the Chancellor was correct in dismissing the complaint. The decree of the Court of Appeals is reversed and that of the Chancellor is affirmed; costs incurred upon appeal are taxed against Selox, Inc.

COOPER, C.J., and FONES, HARBISON and DROWOTA, JJ., concur.