IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2004 Session

# OUTFITTERS SATELLITE, INC., AND EARTHTRAK VEHICLE TRACKING SYSTEMS, INC., v. CIMA, INC., et al.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-795-II     Hon. Carol McCoy, Chancellor**

**No. M2003-02074-COA-R3-CV - February 8, 2005**

This case involves a dispute over the enforcement of non-compete and confidentiality agreements in an employment contract.  A company selling satellite telephone and GPS equipment filed suit in the Chancery Court for Davidson County seeking to enforce a non-compete agreement against a former employee who was allegedly interfering with its business relations with customers and suppliers.  Following a bench trial, the Trial Court determined that the employee had breached the agreements and enjoined the employee from competing with his former employer for one year in North America.  The employee has appealed, asserting that the non-compete agreement is unenforceable or, in the alternative, that its geographic coverage is too broad.  We have determined that the non-compete agreement is enforceable but that its geographic coverage should be limited to the United States rather than to North America.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J. MS, and WILLIAM BRYAN CAIN,  J., joined.

Henry Clay Barry, Lebanon, Tennessee, for Appellant.

David I. Komisar, Nashville, Tennessee, for Appellees.

**OPINION**

Plaintiffs, Outfitter Satellite, Inc. and EarthTRAK Vehicle Tracking Systems, Inc., brought this action against defendants CIMA, Inc. and its owner, Newell Smith, alleging that Smith, a former employee of Outfitter, had interfered with Outfitter's relationships with its customers and entered into contractual discussions with Outfitter's software developer, in violation of a non-compete agreement signed by Smith with Outfitter. Plaintiffs sought a restraining order and injunction prohibiting defendants from competing with plaintiffs and also sought attorney's fees.

The Complaint was accompanied by several affidavits, and a copy of the Non-Compete Agreement. The Trial Court, upon hearing the Application for a "Temporary Injunction", enjoined the defendants "from competing with plaintiff in the sales and service of satellite phone and global vehicle satellite tracking equipment, including satellite subscription service, and from directly or indirectly interfering, or contacting the customers, suppliers, dealers, vendors, and consultants . . .".

Subsequently, defendants filed a Motion to Dismiss, and asserted that CIMA, Inc., had been dissolved and requested that party be dismissed. The Court, responding to the Motion, dismissed CIMA, Inc., as a defendant, and then held a trial on July 3, 2003. The Court noted that Smith had moved to Venezuela during the pendency of the case, but the Court ordered the trial to go forward, as Smith's counsel appeared on defendant's behalf. The evidence at trial established that Smith's employment agreement with Outfitter contains a non-compete clause which provides that Smith will not be involved with any business which competes with Outfitter for twelve months following the termination of his employment there, and will not interfere with any business relationship of Outfitter for eighteen months. The non-compete clause recognizes that "there are no geographical bounds to company sales via the internet and world wide web and other computer systems, and thus, the prohibition likewise has not geographical limitation". Likewise, the Independent Contractor Consulting & Support Agreement between Outfitter and CIMA/Smith contains a substantially similar non-compete clause, but the term is for three years.

At the conclusion of the evidentiary hearing, the Court found that the Contract between CIMA/Smith and Outfitter contained a non-compete with a three year term and no geographical boundaries. The Court found that there was also a confidentiality provision in the Contract, and that the Contract retrieved from Smith's computer between CIMA and Miletus provided that CIMA would represent Miletus for GPS engineering services, web interface development, and would assist with business development, sales, training, marketing, etc. The Court held that Smith breached his agreement with Outfitter by entering into this agreement with Miletus and interfering with its relationship with Outfitter. The Court found that Outfitter provided Smith with training and education relating to the GPS business, and that Smith claimed to have gained Outfitter a contract with Aguar for 500 Vistar units, as reflected by his invoice letter to Outfitter, and that in May 2002, Smith was still using the product that Outfitter purchased from Miletus. The Court found that Outfitter was entitled to a permanent injunction against Smith, to keep him from

competing with Outfitter, but refused to make it global in nature. The Court said that James T. McKinley, President of Outfitter, had requested an injunction covering North America, which the Court Ordered.

In the Final Order, the Court enjoined Smith from competing with Outfitter in North America for one year, from July 3, 2003, and awarded Outfitter $15,680.50 in attorney's fees. This appeal followed.

We review the Trial Court's finding of facts *de novo* accompanied by a presumption of correctness, unless the evidence preponderates against the findings, but review questions of law *de novo* with no presumption of correctness of the Trial Court's ruling. Tenn. R. App. P. 13(d).

As this Court has previously explained:

> Covenants not to compete, because they are in restraint of trade, are disfavored in Tennessee. As such, they are construed strictly in favor of the employee. However, when the restrictions are reasonable under some circumstances, these covenants are enforceable. The factors that are relevant in determining whether a covenant not to compete is reasonable include "the consideration supporting the agreements; the threatened danger to the employer in the absence of such an agreement; the economic hardship imposed on the employee by such a covenant; and whether or not such a covenant should be inimical to public interest."
>
> * * *
>
> In *Allright Auto Parks*, our Supreme Court held that "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." However, while numerous cases could be cited where covenants have been declared unreasonable because of their excessive territorial limits; these provide little direction since the question of reasonableness must be decided on an ad hoc basis. "As is stated by Professor Williston in his learned treatise on contracts, the ultimate question in each case should be 'what is necessary for the protection of the promisee's rights and is not injurious to the public.' " (quoting Williston on Contracts, Vol. 5, s 1643, pp. 4606, 4608).

*Baker v. Hooper*, 50 S.W.3d 463, 469 (Tenn. Ct. App. 2001)(citations omitted).

Our Supreme Court has recognized that such covenants are enforceable "if they are reasonable under the particular circumstances." *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). The reasonableness of the restriction must be measured as of the time of the agreement. *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361 (Tenn. 1966). A determination of reasonableness includes consideration of both a time and geographical component, as well as a requirement that the restraint must not exceed "what is needed to protect the employer's legitimate

-3-

interests". *Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28 (Tenn. 1984); *Selox, Inc. v. Ford*, 675 S.W.2d 474, 475 (Tenn. 1984).

The Supreme Court has also recognized that the employer's legitimate interests do not include a restraint on "ordinary" competition. *Hasty*. It is reasonable, however, for an employer to restrict a former employee's contact with the employer's customers where "customers tend to associate the employer's business with the employee." *Id*. at 473.

In this case, the agreement between Smith and Outfitter was made at a time when Smith had already been working for Outfitter for a few months, and had already established himself as a good salesman, according to McKinley. McKinley also stated that Smith took leads provided by Outfitter and pursued them, becoming the "point man" for Outfitter's customers and for some of its vendors as well. Smith traveled for the company demonstrating its products, even traveling with the military to Turkey and other locations. Outfitter clearly had a legitimate interest in restricting Smith's contacts with its customers and vendors on the event of his departure from the company, because the proof established that these sources would likely have associated Outfitter's business primarily with Smith.

There is no question that there was consideration for the agreement, since Smith was employed with and paid by Outfitter to promote its products, and was provided with leads, product information, etc. Outfitter's vulnerability was real, as demonstrated by the loss of business from its customer in Venezuela and the loss of its relationship with Miletus after Smith left the company. Enforcement of this non-compete agreement is also in the public interest, as it protects businesses from being damaged by unfair competition. Thus, as the Trial Court properly held, the non-compete agreement should be enforced under these circumstances.

A further question is whether the geographical boundary imposed was reasonable. The Court ordered that the restraint would be for a period of one year from the time of judgment, and would include the continent of North America.[1] McKinley testified, however, that although his business was somewhat global, he was only asking the court to enforce the non-compete agreement within the US, where his business was primarily located. His testimony:

> Q.  Would you state to the Court your desire -- why you desire to have this temporary injunction made permanent to the term of the contract period?
>
> A.  Yes. I am still engaged in marketing and selling vehicle tracking systems, although not with the previous set of companies. And I would wish that the noncompete and non-use provisions of the contract with CIMA and Nick

---

[1] Smith takes no issue with the time limit placed on the non-compete. He takes issue with the Court's finding that his counsel "admitted that the defendant had no objection to the issuance of the non-compete injunction as it applies to the North American continent." Smith asserts that this concession does not appear in the transcript, and we agree.

Smith be upheld by this Court so that it would protect me from Nick Smith actually operating from within the United States where I am trying to do primarily my business.

Notwithstanding McKinley's testimony, the Court, in limiting the non-compete agreement to North America rather than the US stated: "McKinley, on the witness stand, requested that the injunction apply to North America". Accordingly, the Trial Court's Judgment will be modified to reflect the geographical boundary as the United States, rather than North America. Otherwise, the Court's Judgment is reasonable and the proof supports the Trial Court's factual determinations. Tenn. R. App. P. 13(d).

Smith also argues the Trial Court erred in restricting him from doing business with Outfitter's vendors. The non-compete agreement that Smith voluntarily signed, however, clearly states that Smith would not "interfere, or intervene or damage in any way the relationship of [Outfitter] with its customers, employees, owners, directors, officers, affiliates, dealers, consultants, vendors, or any other related or similar party" and further that those parties would not be contacted at all, except in the promotion of Outfitter's business. The legitimate interest that Outfitter had in drafting the agreement in this manner was borne out by the fact that Smith later contacted Outfitter's software developer, Miletus, and the relationship between Outfitter and Miletus had ultimately been damaged such that Outfitter was no longer able to use the software which it had paid to develop, and which its customers depended on in the use of their equipment purchased from Outfitter. This type of potential damage was obviously the reason that Outfitter asked Smith to sign the agreement, and Smith agreed to those terms. The terms are reasonable and proper to protect Outfitter's business relationships with its vendors. McKinley testified that those relationships were important to the business because the software was expensive and time-consuming to develop, and thus those vendors could not be easily replaced. Smith has advanced no valid reason that this agreement should not be enforced as to Outfitter's vendors as well as its customers.

Finally, Smith argues the Court erred in relying on the unsigned agreement between Smith/CIMA and Miletus (which was retrieved from the computer Smith used) as a basis for finding that Smith's activities should be enjoined. The Court did note the existence of the draft agreement in its findings, but did not find that it was entered or executed, as Smith claims. In her comments from the bench, the Judge stated that Smith breached his agreement with Outfitters by "entering into this agreement with Outfitter's business relationship established with Miletus." This was only one of many reasons the Court found Smith to be in breach, however, and was not actually reflected as such in the Court's written judgment. As we have often observed, courts speak through their minutes, and not oral pronouncements. *See, Sparkle Laundry & Cleaners v. Kelton*, 595 S.W.2d 88 (Tenn. Ct. App.1979).

Other proof regarding the relationship with Miletus was that Smith had contacted Miletus after his relationship with Outfitter went sour, and Smith was accessing the Miletus software 3 months after his departure from Outfitter. Ultimately, the relationship between Outfitter and Miletus broke down, which caused irreparable harm to Outfitter. This draft agreement was only one

of many factors that the Court had before it in determining that Smith was in breach, and the fact that it was unexecuted does not negate its value as circumstantial evidence to be considered along with the other proof. Moreover, Smith has not challenged the Trial Court's finding that he was in breach of the contract, he has only taken issue with enforcement of the non-compete clause. We find this issue to be without merit.

The Trial Court's Judgment is affirmed, as modified herein, and the cost of the appeal is assessed to the defendant, Newell Smith.

_____
HERSCHEL PICKENS FRANKS, P.J.