IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2015 Session

## JIMMY L. HENSLEY v. COCKE FARMER'S COOPERATIVE

**Appeal from the Circuit Court for Cocke County**
**No. 32157IV     O. Duane Slone, Judge**

_____

**No. E2014-01775-COA-R3-CV-FILED-AUGUST 31, 2015**

_____

Jimmy L. Hensley brought this action to enforce his agreement with a former employer, Cocke Farmer's Cooperative (the co-op), providing for the payment of severance pay to him in the event his employment was terminated without cause. Each side moved for summary judgment. The trial court held the agreement to be valid and enforceable. Accordingly, it granted Hensley summary judgment, awarding him the severance pay set forth in the agreement. The co-op appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Steven H. Trent and R. Andrew Hutchinson, Johnson City, Tennessee, for the appellant, Cocke Farmer's Cooperative.

F. Braxton Terry, Morristown, Tennessee, Jeffrey C. Taylor, Morristown, Tennessee, and W. Lewis Jenkins, Jr., Dyersburg, Tennessee, for the appellee, Jimmy L. Hensley.

**OPINION**

I.

Hensley was employed by the co-op for some thirty-seven years, from 1972 until his termination on May 20, 2010. During the last fourteen years, he served as the co-op's general manager. On February 18, 2010, the parties executed the agreement at issue, which provides in its entirety as follows:

**Termination Agreement for General Manager**

This Severance Agreement is to become effective the date of the last party's signature

Executive or Manager: Jimmy Hensley
Company: Cocke Farmers Co-op

**1. Term of Agreement**:

This agreement will commence on the first day of this agreement and shall terminate on 8-12-2024, unless the terms of this agreement are extended or shortened by written agreement of both parties.

**2. Executive's Eligibility for Severance**:

Executive will be entitled to severance as defined in Section 3 if company terminates Executive's employment for reasons other than :

(A) Executive's death

(B) Company is merged and change of control occurs.

(C) Disability
If Executive is prevented from performing his duties and is declared disabled by a board certified doctor, Executive's severance shall be twelve months salary and payment of health insurance premiums equivalent to then current coverage until Medicare Ins. is obtained.

(D) Cause
Cause being criminal acts pertaining to company or shareholders, leading to conviction.

**3. Severance Package**

The severance package will consist of payment equivalent to then current salary and payment of health insurance

premiums equivalent to then current coverage from the termination date to 8-12-2024.

Package will be paid in lieu of any other severance to Executive.

**4. At Will Employment Status**:

Executive's employment with the Company is "At Will." This means that Executive is free to resign at any time and the Company is free to terminate employment at any time for any reason.

The fact that Executive is employed "At Will" does not relieve Company or Executive of the terms and conditions of this agreement.

**5. Acknowledgment**:

Executive acknowledges that he has read and understands the agreement and has entered into it freely based on his own judgment.

Company acknowledges it has read and understands this agreement and has entered into this agreement freely, based on it's [sic] own judgment.

The person executing this agreement has the full power and authority to execute this agreement on behalf of the Company and it's [sic] Board of Directors.

(Bold font in original.)

The minutes of the February 18, 2010 meeting of the co-op's board of directors (the board) reflect that "a motion was made . . . to approve the submitted agreement between the Cocke Farmers Co-op and Jimmy Hensley, as manager . . . motion carried." The board's minutes for the March 2010 meeting indicate that "the minutes for the February meeting were read and approved."

At a May 20, 2010 meeting, the board, according to its minutes, passed two motions, *i.e.*, one "to resend [sic] the motion for a 14 year contract for Jimmy Hensley," and another "to dismiss Jimmy Hensley, without cause." Some two months later,

3

Hensley filed this action asking, in effect, for enforcement of the agreement and an award to him of the severance pay agreed to by the parties. The co-op answered, asserting, among other things, that the agreement was ambiguous, unsupported by consideration, and unenforceable. After discovery, both sides moved for summary judgment.

On May 2, 2014, the trial court entered an order granting Hensley partial summary judgment in an order finding and holding as follows:

> 1. Jimmy Hensley and Cocke Farmers Cooperative entered into a valid and enforceable written agreement dated February 18, 2010, a copy of which the parties have presented to the Court in their motions for summary judgment.
>
> 2. The written agreement is clear and unambiguous.
>
> 3. The agreement was supported by adequate consideration.
>
> 4. It is not disputed by Cocke Farmers Cooperative that the person who signed the written agreement had the authority to sign the agreement on behalf of Cocke Farmers Cooperative.
>
> 5. The written agreement executed by the parties was not the product of fraud or coercion.
>
> 6. At its May 20, 2010, board of directors meeting, Cocke Farmers Cooperative discharged Jimmy Hensley without cause, as shown by the minutes of the corporation's board.
>
> 7. Cocke Farmers Cooperative therefore owes Jimmy Hensley severance benefits under the written agreement executed by the parties.
>
> IT IS THEREFORE ORDERED that the motion for summary judgment filed by Cocke Farmers Cooperative, Inc. is DENIED and the motion for partial summary judgment filed by Jimmy Hensley is GRANTED.
>
> IT IS FURTHER ORDERED that this matter is scheduled for trial . . . on the issue of the amount [of] damages owed to Jimmy Hensley by Cocke Farmers Cooperative.

(Capitalization in original.)

On August 14, 2014, the trial court entered a final judgment awarding Hensley severance pay under the agreement. The court stated, in pertinent part, as follows:

> No genuine dispute exists as to any material fact with respect to the benefits owed to Jimmy Hensley by Cocke Farmers Cooperative, and judgment should be entered in favor of Jimmy Hensley.
>
> Jimmy Hensley was, at all times material to these proceedings, an at will employee of Cocke Farmer's Cooperative and he did not have any employment agreement that entitled him to employment for a specific period of time.
>
> *    *    *
>
> The severance benefits provided for Jimmy Hensley by Cocke Farmer's Cooperative in the Termination Agreement for General Manager are severance benefits under Tennessee Law and are not liquidated damages.
>
> The board of directors of the Cocke Farmers Cooperative approved the Termination Agreement for General Manager in its meeting in February 2010, recorded this fact in its minutes for February 2010, and then approved the February 2010 minutes in its meeting in March 2010.
>
> None of the challenges now raised by Cocke Farmers Cooperative to the amount of payments due to Jimmy Hensley apply or change the amount due to Jimmy Hensley. The severance benefits provided to Jimmy Hensley are not a penalty and are not subject to the defenses of mitigation or after-acquired evidence.
>
> The computation required to ascertain the amount of severance benefits due are purely mathematical based on the undisputed facts . . .
>
> The computations to arrive at the figures due to Jimmy Hensley are not disputed by any party[.]

5

(Numbering in original omitted.) The trial court ordered the co-op to pay Hensley $380,236.21 in accrued severance benefits plus pre-judgment interest. The court further ordered the co-op to pay Hensley $6,125 per month plus his premiums "for health insurance coverage equivalent to the . . . coverage in force for Jimmy Hensley immediately prior to his termination," until August 12, 2024. The co-op timely filed a notice of appeal.

II.

The co-op raises the following issues as taken from its brief:

1. Whether the trial court erred in holding that the alleged contract was valid and supported by adequate consideration.

2. Whether the trial court erred in holding that damages under the alleged contract were not a penalty, mitigation did not apply, and that [Hensley] was owed damages in the amount awarded, if any.

3. Whether the trial court erred in holding that no material facts were in dispute under Rule 56 of the Tennessee Rules of Civil Procedure.

III.

Our standard of review of a grant of summary judgment in an action filed before July 1, 2011,[1] such as this one, is as follows:

A summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008). When ruling on a summary judgment motion, the trial court must accept the nonmoving party's evidence as true and resolve any doubts concerning the existence of a genuine issue of material fact in favor of the nonmoving party. *Shipley v. Williams*, 350 S.W.3d 527, 536 (Tenn. 2011) (quoting *Martin v. Norfolk S. Ry.*, 271

_____

[1] In 2011, the General Assembly changed the rubric of summary judgment. This action was filed before the change became effective on July 1, 2011.

6

S.W.3d 76, 84 (Tenn. 2008)). "A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). "The granting or denying of a motion for summary judgment is a matter of law, and our standard of review is de novo with no presumption of correctness." *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013).

IV.

A.

The co-op argues that the agreement is so vague, ambiguous, and indefinite that it must be held unenforceable. We disagree. In *Wager v. Life Care Ctrs. of America, Inc.*, No. E2006-01054-COA-R3-CV, 2007 WL 4224723 at \*10-11 (Tenn. Ct. App. E.S., filed Nov. 30, 2007), another case involving a contract for an employee's severance pay, we stated:

> In interpreting the contract, we must keep in mind several basic tenets of contract law. For instance, the language in dispute must be examined in the context of the entire agreement. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985). "All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). Also, words must be given their usual and ordinary interpretation. *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct. App. 1986). "A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

7

The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way. *Id*. "An ambiguity does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions." *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994). "Neither the parties nor the courts can create an ambiguity where none exists in a contract." *Id*.

"The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles." *Rainey*, 836 S.W.2d at 118. Of course, the "intention of the parties" refers to their intention when the contract was made, not their desired interpretations after a dispute arises. The court will look to the material contained within the four corners of the contract to ascertain its meaning as an expression of the parties' intent. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Therefore, if a contractual clause, read in the proper context, unambiguously mandates a particular result, we will not disturb that result merely because it may be harsh for one party or the other. As stated in *Wright Med. Tech., Inc. v. Orthomatrix, Inc.*,

> [i]f there is no ambiguity, the court must interpret the contract as written, rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. [Bank] of Crossville*, 620 S.W.2d 526 (Tenn. Ct. App. 1981). Courts do not make contracts for the parties but can only enforce the contract which the parties themselves have made. *McKee v. Continental Ins. Co.*, 191 Tenn. 413, 234 S.W.2d 830, 22 ALR2d 980 (1950).

No. W2000-02744-COA-R3-CV, 2001 WL 523992, *3 (Tenn. Ct. App. W.S., filed May 17, 2001). "The courts will not make a new contract for parties who have spoken for themselves, and will not relieve parties of their contractual

obligations simply because these obligations later prove to be burdensome or unwise." ***Vargo v. Lincoln Brass Works, Inc.***, 115 S.W.3d 487, 492 (Tenn. Ct. App. 2003) (citations omitted).

In the present case, the terms of the agreement are clear, definite, unambiguous, and not difficult to understand. We affirm the trial court's judgment that the agreement is not void for vagueness.

B.

The co-op further asserts that the agreement fails for lack of sufficient consideration. The agreement provides for severance pay for Hensley, an employee of more than thirty-five years, who had been serving as a general manager for fourteen years at the time the agreement was executed. The severance pay was due in the event Hensley was terminated without cause. The agreement also provided that Hensley's employment status remained "at-will." The consideration provided by Hensley was his continuing employment with the co-op. In this regard, Hensley testified by deposition as follows:

> Q. Now, what's your understanding of the contents of that agreement? What do you think that agreement does? What's the purpose?
>
> A. It's an agreement for me to be employed by Cocke Farmer's Co-Op until I retired in 2024.
>
> *    *    *
>
> Q. Now, do you agree that that would be a benefit to you, to be guaranteed employment until retirement?
>
> A. Well, it would have kept me from looking for other jobs until I retired.
>
> Q. *Now, what did you give the Co-Op in return?*
>
> A. *I stayed and worked.*
>
> Q. Now, did you promise to work for the Co-Op for a specific period of time?

9

A. Well, I was going to work there until I retired. I had planned on working there until I retired.

Q. Were you contractually obligated to do so under the terms of that agreement?

A. Well, it says that I'd be free to terminate – or, let's see, somewhere – under this No. 4, it says it means the executive is free to resign at any company – "at any time and the company is free to terminate employee at any time."

Q. Did you give up any job opportunities to sign that contract?

A. *Once I signed it, I didn't look for any*.

Q. *Were you looking before?*

A. *Yes.*

Q. Where were you looking?

A. At other co-ops.

*     *     *

Q: . . . did you think that signing this contract would prevent the board from letting you go?

A. Yes.

Q. And that was your purpose for entering into this contract, wasn't it?

A. My purpose was to retire from Cocke Farmer's Co-Op.

Q. So, it was part of your purpose for signing that contract to try to guarantee yourself employment with the Co-Op until the age of 65?

A. Yes.

(Emphasis added.)

The co-op cites no authority, nor have we found any, supporting the proposition that an executive's continuing employment is insufficient consideration for a contract providing a severance package as part of his or her compensation arrangement. It appears that Tennessee appellate courts have not been presented with this precise issue before. However, our courts have held on numerous occasions that continuing employment is sufficient consideration to support an employment contract in other contexts, primarily in construing covenants not to compete. *See Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 336 (Tenn. Ct. App. 2009) ("As an at-will employee, Dorgan's continued employment by Cummings was consideration for his execution of the . . . Non-Compete Agreement"); *Girtman & Assocs., Inc. v. St. Amour*, No. M2005-00936-COA-R3-CV, 2007 WL 1241255 at *8 (Tenn. Ct. App. M.S., filed Apr. 27, 2007) ("Continued future employment of an at-will employee has been deemed to be sufficient consideration in and of itself to support enforcement of a covenant not to compete") (citing *Central Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 33 (Tenn. 1984); *Selox, Inc. v. Ford*, 675 S.W.2d 474, 475 (Tenn. 1984); *Ramsey v. Mutual Supply Co.*, 427 S.W.2d 849, 852 (Tenn. Ct. App. 1968)).

We note that if we were to agree with the co-op's argument, many severance pay agreements in Tennessee arguably would be susceptible to invalidation for insufficient consideration. This would not be a salutary development. *See generally Allmand v. Pavletic*, 292 S.W.3d 618, 632 (Tenn. 2009) (observing that "severance provisions are common and may be viewed favorably as a matter of policy"). The contract specifically provides that Hensley would remain an "at-will" employee. We affirm the trial court's holding that "the agreement [is] supported by adequate consideration."

## C.

Next, the co-op argues that the amount of severance pay the parties agreed upon is an unreasonable and unenforceable "penalty." The co-op cites *Guiliano v. Cleo, Inc.*, 995 S.W. 2d 88, 101 (Tenn. 1999), for its observation that "if the provision and circumstances indicate that the parties intended merely to penalize for a breach of contract, then the provision is unenforceable as against public policy." In this case, the provision at issue is an enticement to an employee to continue his "at will" employment – Nothing more and nothing less. Furthermore, nothing in the language indicates that the subject provisions are intended to "penalize for a breach of contract."

*Guiliano* examined the distinction between a contract for severance pay and one providing for liquidated damages, stating as follows:

11

The distinction between liquidated damages and severance pay is important in this case. If [the agreement] provides for liquidated damages, then recovery is conditioned upon a showing that [the employer] breached the contract and that the amount of recovery was a reasonable estimation of damages. However, *if the provision calls for severance pay, then recovery by the* [*employee*] *is absolute in the event of his termination, regardless of whether* [*the employer*] *breached the contract or whether the amount was a reasonable damage assessment.*

The term "liquidated damages" is defined by case law as a "sum stipulated and agreed upon by the parties at the time they enter their contract, to be paid to compensate for injuries should a breach occur." The stipulated amount represents an estimate of potential damages in the event of a contractual breach where damages are likely to be uncertain and not easily proven.

In contrast, *the recovery of severance pay is not conditioned upon a breach of contract or a reasonable estimation of damages.* Generally, severance pay is a form of compensation paid by an employer to an employee at a time when the employment relationship is terminated through no fault of the employee. *Black's Law Dictionary* 1374 (6th ed. 1990). The reason for severance pay is to offset the employee's monetary losses attributable to the dismissal from employment and to recompense the employee for any period of time when he or she is out of work.

*Id.* at 96-97 (emphasis added; internal citations and footnote omitted).

Ten years after *Guiliano*, the Supreme Court reaffirmed and applied its principles in *Allmand*, 292 S.W.3d at 630-31. Both *Allmand* and *Guiliano*, in answering the question of whether an employment contract provided for liquidated damages or severance pay, apply the fundamental principle that "[c]ourts must look at the plain meaning of the words in a contract to determine the parties' intent." *Allmand*, 292 S.W.3d at 630; *Guiliano*, 995 S.W.2d at 100 ("courts must focus on the intentions of the parties based upon the language in the contract and the circumstances that existed at the time of contract formation").

12

The contract at issue here, although barely more than a page long, expressly refers to "severance agreement" or "severance package" or "severance" four times, not including the duplicative section headings. The parties' express language thereby indicates their intention that the agreement is one for severance pay. The co-op's argument that the agreement actually provides for liquidated damages is without merit. Consequently, the *Guiliano* case, which states that "if the provision calls for severance pay, then recovery by the [employee] is absolute in the event of his termination, regardless of whether . . . the amount was a reasonable damage assessment," *id.* at 96, is of no avail to the co-op. We affirm the trial court's judgment that "[t]he severance benefits provided to Jimmy Hensley . . . are severance benefits under Tennessee law and are not liquidated damages [and] not a penalty."

D.

The co-op asserts that Hensley's recovery should be eliminated or reduced because of his alleged failure to mitigate his damages. In its brief, the co-op argues that "[o]ne who is injured by the wrongful or negligent acts of another, whether as a result of a tort or of a breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage[,] and to the extent that his damages are the result of his active and unreasonable enhancement thereof or are due to his failure to exercise such care and diligence, he cannot recover." Again, as Hensley asserts in his brief, in this case "[t]here was no breach of contract[,] as termination of at-will employment does not constitute breach of contract." The agreement does not impose upon Hensley an obligation to mitigate his damages. The co-op cites no authority suggesting that mitigation of damages is a concept applicable to the situation where a party is seeking enforcement of a severance pay agreement.

Furthermore, even if we were to assume, solely for the purpose of argument, that mitigation is in some way material to the issues in this case, we have examined the record and find that the proof does not, in any way, substantiate the co-op's assertion that Hensley failed to exercise due diligence in trying to find new employment. He described his attempts to do so over the period he was unemployed, approximately two years after the board discharged him. He applied for positions with several companies and spoke with the co-ops for nearby counties to see if jobs were available. Ultimately, Hensley went from making $74,342 plus health benefits, working as the general manager or effectively the "chief executive" of the co-op, to his new job earning $32,500 per year working in a laboratory testing ketchup for ConAgra Foods. Having noted his efforts, however, we reiterate our holding that the question of mitigation is not implicated by the facts of this case. We affirm the trial court's ruling that the defense of failure to mitigate damages is inapplicable under the facts and circumstances presented in this case.

13

Finally, the co-op argues that genuine issues of material fact exist, rendering the trial court's summary judgment improper. As already stated, both parties filed a motion for summary judgment below. Briefly summarized, the co-op argues that the board did not actually ratify or approve the agreement, despite its minutes stating to the contrary; and that the board actually terminated Hensley "for cause," or in the alternative, would have terminated him for cause if it had known about his alleged "misconduct" before the board meeting of May 20, 2010 when it fired him, according to the minutes, "without cause."

The Supreme Court's Special Workers' Compensation Appeals Panel recently issued its opinion deciding the co-op's appeal of Hensley's separate, earlier-filed workers' compensation claim against it. *Hensley v. Cocke Farmers Cooperative*, No. E2014-00264-SC-R3-WC, 2015 WL 1929874 (Tenn. Workers' Comp. filed Apr. 27, 2015). In that opinion, the Court stated,

> Employer's response in opposition to Employee's motion [for partial summary judgment] was supported by excerpts of the depositions of Phillip Morgan, Tommy Lillard, Roger Templin and Burl Roberts. Mr. Morgan testified that Employee had attempted to intimidate members of the Board and had not informed the Board about one hundred tons of missing fertilizer. Mr. Lillard testified that there had been an allegation made that Employee had an affair with a female employee. Mr. Templin testified that Employee had failed to timely inform the Board that its Morristown branch had lost $118,000. He also mentioned the missing fertilizer incident, stating that it had occurred in 2002. Mr. Roberts testified that Employee had been terminated for cause, but the Board had "give[n] him a break so he could move on down somewhere else."

> The Trial Court granted Employee's motion. The Trial Court's order stated, "As a matter of law, the official action of the Cocke Farmers Co-op is contained in the monthly Minutes dated May 20, 2010. Consequently, as a matter of law, the Plaintiff, Jimmy Hensley, was discharged without cause."

\*     \*     \*

> It is undisputed that Employer is a nonprofit corporation, chartered under the laws of this State. Tennessee Code Annotated section 48–58–101(b) (2012) provides that "all corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board." In Tennessee, a corporation speaks through the minutes of its board, and the "unofficial declarations" of members of the board cannot disprove the contents of the minutes. ***Jones v. Planters Bank of Tennessee***, 56 Tenn. 455, 460 (1872). *See also,* ***First Tennessee Bank Nat. Ass'n v. Athletic Indus. Int'l, Inc.***, 1989 WL 37261, at \*4 (Tenn. Ct. App. Apr. 20, 1989)(stating the rule and observing that corporate acts may be proven by other evidence when no minutes exist). This rule is consistent with the law in other states. *See, e.g.,* ***Am. Tel. & Tel. Co. v. Purcell Co.***, 606 So.2d 93, 97 (Miss. 1990); ***Jones v. State ex rel. Indiana Livestock Sanitary Bd.***, 163 N.E.2d 605, 608 (Ind. 1960). Applying the rule to the facts of this case, we conclude that the Trial Court properly held that the minutes of Employer's board meeting of May 20, 2010 were conclusive evidence of the reason for Employee's termination, and the parol testimony of some members of the board did not create a genuine issue of fact on the subject.

*Id.*, 2015 WL 1929874 at \*2, \*4.

We hold that the co-op board's minutes conclusively establish that the board approved the agreement at issue here, and that it terminated Hensley without cause. We further note that nothing in the allegations or proof regarding Hensley's alleged "misconduct" even remotely approaches "cause" as specifically defined in the agreement as "criminal acts pertaining to company or shareholders, leading to conviction." Moreover, the record fully supports the trial court's findings that "[i]t is not disputed . . . that the person who signed the written agreement had the authority to sign the agreement on behalf of Cocke Farmers Cooperative," and that "[t]he written agreement executed by the parties was not the product of fraud or coercion." We affirm the trial court's grant of summary judgment in Hensley's favor, finding no genuine issue of material fact.

15

Ultimately, this case largely turns on the following fundamental principle, stated in the ***Guiliano*** and ***Wager*** opinions cited above, and succinctly summarized by the Supreme Court as follows:

> Contract law in Tennessee plainly reflects the public policy allowing competent parties to strike their own bargains. Steven W. Feldman, *Tennessee Practice: Contract Law & Practice* § 1:6, at 17 (2006). Tennessee's courts are "not at liberty to make a new contract for parties who have spoken for themselves." ***Smithart v. John Hancock Mut. Life Ins. Co.***, 167 Tenn. 513, 525, 71 S.W.2d 1059, 1063 (1934). Accordingly, the courts do not concern themselves with the wisdom or folly of a contract, ***Chapman Drug Co. v. Chapman***, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960), and will not relieve a party of its contractual obligations simply because the contract later proves to be burdensome or unwise. ***Boyd v. Comdata Network, Inc.***, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002); 28 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 70:209, at 232 (4th ed. 2003) ("Courts are not in the business of rewriting contracts to bail out parties who have failed to prudently construct their business transactions.").

***Ellis v. Pauline S. Sprouse Residuary Trust***, 280 S.W.3d 806, 814 (Tenn. 2009) (italics in original).

V.

The judgment of the trial court is affirmed. Costs on appeal are assessed to the appellant, Cocke Farmer's Cooperative. The case is remanded to the trial court for enforcement of the trial court's judgment and collection of costs below, pursuant to applicable law.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE