# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 16, 2016 Session

## JOHN JASON DAVIS v. JOHNSTONE GROUP, INC. v. APPRAISAL SERVICES GROUP, INC.

### Appeal from the Chancery Court for Madison County
### No. 73130     James F. Butler, Chancellor

_____

### No. W2015-01884-COA-R3-CV – Filed March 9, 2016
_____

Appellant appeals the trial court's grant of Appellee's complaint for declaratory judgment and the trial court's denial of Appellant's counter-complaint for injunctive relief. After Appellee filed notice with Appellant of his intent to leave Appellant's employ and join a competing appraisal firm, Appellant sought to enforce the non-competition provision of the parties' agreement. Appellee then filed for a declaratory judgment that the non-competition provision was unenforceable. The trial court determined that there were no special facts present over and above ordinary competition or any legitimate protectable business interests to warrant enforcement of the non-competition agreement. Appellant appeals. Discerning no error, we affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed and Remanded

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

Richard Darnell Bennett and Allison Kay Moody, Memphis, Tennessee, for the appellant, Johnstone Group, Inc.

William B. Ryan and Lang Wiseman, Memphis, Tennessee, for the appellees, John Jason Davis and Appraisal Services Group, Inc.

**OPINION**

## I. Background

On or about June 3, 1998, John Jason Davis began working for Appellant Johnstone Group, Inc. ("JGI"), which provides real estate appraisal services. At the time Mr. Davis joined JGI, he had no experience in the real estate appraisal industry; however, it was expected that Mr. Davis would become a real estate appraiser trainee and would work with JGI's owner, Mark Johnstone,[1] to become a Tennessee licensed Certified General Real Estate Appraiser. In conjunction with his employment, JGI asked Mr. Davis to sign an employment agreement that contained provisions for non-competition and reimbursement of training costs.

In January of 2000, Mr. Davis registered as a real estate appraiser trainee. Mr. Davis then completed 180 hours of classroom training; Mr. Davis paid for this training. Following his classroom training, Mr. Davis proceeded to the practice requirements for certification. The certification process required an accumulation of 3,000 hours of practical appraisal experience under the supervision of a currently certified real estate appraiser. Under Mr. Johnstone's supervision, Mr. Davis completed the 3,000 hours. In November of 2005, Mr. Davis became a licensed Certified General Real Estate Appraiser. On November 3, 2005, Mr. Davis, as a condition of continued employment with JGI, signed a new employment agreement (the "2005 Agreement"). Like the first employment agreement, which Mr. Davis signed in 1998, the 2005 Agreement contained a non-competition clause; however, the 2005 Agreement struck any language requiring reimbursement of training costs. Regardless, all of Mr. Davis' training occurred prior to the execution of the 2005 Agreement.

On or about April 13, 2015, Mr. Davis submitted notice to JGI of his intent to resign his employment effective April 28, 2015. Mr. Davis intended to leave JGI to work for Appraisal Services Group, Inc. ("ASG," and together with Mr. Davis, "Appellees"). On April 20, 2015, JGI, through its attorney, sent a letter to Mr. Davis. The letter stated that "should [Mr. Davis] actually begin working for [ASG], in any capacity, such conduct would be a direct violation of the [2005] Agreement and result in [JGI] taking legal action to enforce [Mr. Davis'] compliance with the Agreement." JGI sent a similar letter, dated April 21, 2015, to ASG.

On May 1, 2015, Mr. Davis filed a complaint for declaratory judgment in the Chancery Court for Madison County. By his complaint, Mr. Davis asked the trial court to declare that the non-competition provision of the parties' 2005 Agreement was

---

[1] Mr. Johnstone was also the President of the Tennessee Real Estate Commission.

unenforceable. Specifically, Mr. Davis argued that the non-competition provision was unenforceable because JGI "does not have a legitimate business interest that is properly protectable by the non-compete provision . . . ." Mr. Davis further averred that JGI: (1) had not provided Mr. Davis with any specialized training above and beyond general typical industry training that would give him an unfair advantage over JGI; and (2) had not given Mr. Davis access to trade or business secrets or other confidential information justifying the non-competition requirement. JGI filed its answer to the complaint on May 8, 2015. In relevant part, JGI admitted "that Davis paid for the 180 hours of classroom education required to obtain his license, and that Davis is responsible for paying the fees required to maintain his license;" however, JGI maintained that the non-competition provision was enforceable as "valid and reasonable and necessary to protect the legitimate business interests of JGI . . . ." Concurrent with its answer, JGI filed a counter-complaint against Mr. Davis and ASG (as a third-party defendant), seeking injunctive relief and damages "due to Davis' actions in violation" of the non-competition provision of the parties' 2005 Agreement. In its counter-claim, JGI averred that it had provided Mr. Davis specific training on how to: (1) prepare appraisals and perform appraisal functions, including training in the manner and methods that JGI uses to compile data, analyze data, and prepare its appraisals; (2) prepare property evaluations and appraisals in eminent domain cases; and (3) prepare detailed market studies, damage studies and going concerns valuations. JGI claimed that the methods, on which Mr. Davis received training, were "unique and proprietary" to JGI. JGI further averred that, due to the small size of its office, Mr. Davis "was involved with all aspects of JGI's business and operations . . . ." On June 1, 2015, Mr. Davis filed his answer to JGI's counter-complaint, wherein he denied any liability.

Following a hearing, the trial court entered an order, on July 6, 2015, granting declaratory judgment in favor of Mr. Davis and denying JGI's cross-complaint for injunctive relief and damages. The trial court entered an amended order on July 24, 2015, which incorporated, by reference, the trial court's letter ruling dated June 16, 2015 (discussed *infra*). By order of October 6, 2015, this Court requested entry of a final judgment in the trial court. Specifically, we determined that the July 24, 2015 order was not final as it failed to adjudicate JGI's request for attorney's fees. In response, the trial court entered a Final Judgment on October 14, 2015. We conclude that, with the entry of the October 14 order, the trial court's judgment is now final and appealable under Tennessee Rule of Appellate Procedure 3.

## II. Issues

JGI appeals. It raises four issues for review as stated in its brief:

I. Whether the trial court erred in determining that [JGI] providing extensive training to Appellee to become a real estate appraiser is not the type of

legitimate business interest worthy of protection by a covenant not-to-compete.

II. Whether the trial court erred in determining that an employer's training must be unique to the industry to qualify as a legitimate business interest.

III. Whether the trial court erred in finding that Appellee had not entered into an enforceable covenant not-to-compete contract with JGI.

IV. Whether the trial court erred in failing to find that the irreparable harm to JGI outweighed any harm to Appellee.

### III. Standard of Review

Because the trial court tried this case sitting without a jury, we conduct a *de novo* review of its decision based upon the record, "with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings." Tenn. R. Civ. P. 13(d); *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816 (Tenn. Ct .App. 2011) (citation omitted). "For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect." *Nw. Tenn. Motorsports Park, LLC*, 410 S.W.3d at 816 (citations omitted). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

We note that, although the trial court's order (*infra*) states that "[e]ach of the parties put on proof and testimony at the hearing," our appellate record contains neither a transcript of the evidence adduced at the hearing nor a Tennessee Rule of Civil Procedure 24 statement of the evidence. Although, as noted above, Tennessee Rule of Appellate Procedure 13(d) directs this Court to review the evidence in the record to determine whether the evidence preponderates against the trial court's findings, without a transcript or statement of the evidence, this Court must presume that every fact admissible under the pleadings was found or should have been found in the appellee's favor. *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1987); *Richmond v. Richmond*, 690 S.W.2d 534, 536 (Tenn. Ct. App.1985); *In re Rockwell*, 673 S.W.2d 512, 516 (Tenn. Ct. App.1983). In other words, in the absence of a transcript or statement of the evidence, this Court must presume that there was sufficient evidence before the trial court to support its judgment. *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry*, 402 S.W.3d 654, 661 (Tenn. Ct. App.2012), *perm. app. denied* (Tenn. April 10, 2013); *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007); *McKinney v. Educator and Exec. Insurers, Inc*., 569 S.W.2d 829, 832 (Tenn. Ct. App.1977).

## IV. Analysis

The non-competition provision at issue in this case is contained in Paragraph 7 of the parties' 2005 Agreement; it provides, in relevant part:

> In consideration of employment by Employer of Employee, the on-job training that Employee will receive there under, and the covenants of Employer contained herein. Employee acknowledges and agrees that Employer's customers, potential customers, and lists of customers are valuable, special, and unique assets of Employer, and that Employee, by virtue of employment, will acquire access to such confidential trade information, the use of which by a competitor could result in serious damage or injury to the business interest of Employer. Employee agrees that, during the term of employment by Employer, the Employee shall serve the customers of Employer in a representative capacity only, and that on termination of employment with Employer, for any cause or reason whatsoever, Employee will not, for a period of two (2) years thereafter, (a) engage, or be employed, directly or indirectly, in any aspect of the business of conducting real estate appraisals, consulting, research, or any other substantially similar service either for Employee or for any individual firm, corporation or other entity in the business of conducting real estate appraisals, consulting, research, or any other substantially similar service having an office within a one hundred fifty (150) mile radius from the principal office of Employer in Jackson, Tennessee, nor (b) call upon, solicit, service, or interfere with or divert in any way any customers served by Employer in such territory or therein engage or be employed in any business substantially similar to the business of Employer, nor (c) divert or interfere with in any way any of Employer's employees or induce any of Employer's employees to leave Employer. Employee further agrees that for and during the entire term of employment by Employer and for a period of two (2) years following termination of employment, all information, data, sales figures, customer (current and potential) lists, tax records, personnel history, promotional procedures, and other pertinent information of Employer shall be considered and kept as private and privileged records . . . .

Non-compete agreements are disfavored in Tennessee because they restrain trade. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). Nevertheless, courts will uphold such agreements if such restrictions are reasonable. *Id*. In determining whether a non-compete agreement is reasonable, a court will inquire into the consideration supporting the agreement, the threatened danger to the employer in the absence of such an agreement,

the economic hardship imposed on the employee by such a covenant, and whether such an agreement is inimical to the public interest. *Allright Auto Parks, Inc. v. Berry*, 409 S.W.2d 361, 363 (Tenn. 1966). Furthermore, "the time and territorial limits involved must be no greater than is necessary to protect the business interests of the employer." *Id*. (citing *Matthews v. Barnes*, 293 S.W. 993 (Tenn.1927); *Ark. Dailies, Inc. v. Dan*, 260 S.W.2d 200 (Tenn. Ct. App. 1953); *Federated Mut. Imp. & Hwe. Ins. Co. v. Anderson*, 351 S.W.2d 411 (Tenn. Ct. App. 1961); 17 C.J.S. Contracts §§ 238-258). Finally, the question of territorial limits and temporal limits must be decided on a case-by-case basis. *Id*.

In the instant case, Mr. Davis argues that JGI cannot establish a legitimate business interest that would justify the enforcement of the non-competition clause of the parties' 2005 Agreement. In determining whether JGI has a legitimate protectable business interest, we are guided by the Tennessee Supreme Court's analysis in the *Hasty* opinion, in which the Court observed:

> Of course, any competition by a former employee may well injure the business of the employer. An employer, however, cannot by contract restrain ordinary competition. In order for an employer to be entitled to protection, there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer.

671 S.W.2d at 473 (citations omitted). Accordingly, JGI must show special facts beyond protection from ordinary competition that would give Mr. Davis an unfair advantage in competing with JGI. This Court elaborated on this requirement in *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637 (Tenn. Ct. App. 1999), *perm. app. denied* (Tenn. Apr. 17, 2000):

> Considerations in determining whether an employee would have such an unfair advantage include (1) whether the employer provided the employee with specialized training; (2) whether the employee is given access to trade or business secrets or other confidential information; and (3) whether the employer's customers tend to associate the employer's business with the employee due to the employee's repeated contacts with the customers on behalf of the employer. These considerations may operate individually or in tandem to give rise to a properly protectable business interest.

*Id*. at 644 (citations omitted). Thus, with due consideration to the three *Vantage* factors, "the employer must show 'special facts present over and above ordinary competition' such that the employee would have an unfair advantage over the employer absent the non-competition

agreement after his employment has ended." ***Corbin v. Tom Lange Co., Inc.,*** No. M2002-01162-COA-R3-CV, 2003 WL 22843167, at \*6 (Tenn. Ct. App. Dec. 1, 2003), *perm. app. denied* (Tenn. Oct. 4, 2004) (quoting ***Hasty***, 671 S.W.2d at 473 (citation omitted)). This "analysis focuses on the employer and the employee who are parties to the non-compete agreement. The conduct of other players in this scenario [such as ASG] . . . may be relevant background, but ultimately has limited relevance to the determination of whether the employer has a legitimate protectable business interest and whether the covenant is reasonable and enforceable." ***Columbus Med. Servs., LLC v. Thomas***, 308 S.W.3d 368, 386 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. March 1, 2010).

In its June 16, 2015 letter ruling, which was incorporated into its order, the trial court found, in relevant part, as follows:

> The core issue is whether or not Johnstone has a legitimate business interest in enforcing the non-compete agreement and keeping Davis from working with ASG for two years. Here, Davis received the benefit of working in Johnstone's office under Johnstone's supervision for 3,000 hours. After that, and all the while taking his class training and passing the tests, he became a certified real estate appraiser. Thus, for the most part, all his training occurred prior to the 2005 contract. Not all of the 3,000 hours was spent with Johnstone directly. Johnstone does all commercial appraisal work. He does not do residential appraisals. He works throughout West Tennessee. . . . His office has two appraisers. He utilizes software to merge data. He adheres to appraisal standards as all are required to do. Appraising is heavily regulated, but appraisers may vary in their thought processes in arriving at an appraisal value.
>
> \*\*\*
>
> Johnstone participated in Davis' training. Davis also participated independently by going to school at his own expense and worked in Johnstone's office preparing data for appraisals under Johnstone's supervision. The work of preparing an appraisal is unique. The information is gathered, analyzed, assigned weight and the appraisal final document must contain certain things pursuant to the standards promulgated by the Board. Ultimately, it is an educated guess, based on information available to all appraisers, and analyzed with a trained eye to arrive at a proposed value.
>
> The evidence thus far indicates that (1) Davis did not take any of

Johnstone's business information, confidential information, business records, business forms, client list, or similar information, nor was any of that type of information sought by ASG.  (2) bidding and pricing factors change rapidly and depend greatly on the specifications of the client, as to scope and timeliness, the type of appraisal required, or requested, and whether or not the appraiser had appraised it in the past.  Information on pricing one job is not necessarily useful in pricing another job.  (3) The evidence to support that Davis had become the "face of the business" for Johnstone is unpersuasive. While Davis necessarily had some contact with the clients, or client representatives, it was seldom in a setting where he became the face of the business.  Johnstone signed off on all of Davis' appraisal work. . . . Davis did not become involved in the business of the office, nor was he concerned with office expenses and receipts.  He had no opportunity to "buy into" the business. (4) The training Davis received with Johnstone is generally the same training he would have received in any other office in his quest to become a certified real estate appraiser.  There is no secret training that others do not know about which would give Davis an unfair advantage over Johnstone in competing with Johnstone with another employee.  Johnstone does not have a protectable interest in the general knowledge and skill of an employee. Johnstone did not provide all of Davis' training.  The fact that Davis received extensive on the job training will not carry the day for Johnstone.  The training must be truly unique to the industry.  There is no evidence that no one else is doing this type of training and that the training gives Davis an advantage in obtaining businesses over Johnstone or other competitors.  The only advantage the Court can see in this particular case is that ASG, as opposed to Davis, might be able to obtain a bid over Johnstone because it might be able to provide services in a more timely manner.  Of course, Johnstone can remedy this by hiring another appraiser immediately.

There is no evidence that Johnstone's method of appraising is unique or secret and that no one else has his method.  There is no evidence that Johnstone's methods for appraising give him an economic advantage over the other appraisers in other firms.  Further, there is no evidence that Johnstone has a customer list that he services exclusively, or that Davis has any special relationships with prior customers, such that Davis would enjoy an unfair competitive advantage in competing with Johnstone for his customer's business.

Based on the foregoing findings, the trial court declined to issue injunctive relief to JGI.

On appeal, JGI contends that the trial court erred in denying its request for a temporary injunction and in granting Mr. Davis' complaint for declaratory judgment. Specifically, JGI contends that it is entitled to injunctive relief to protect its legitimate business interests, which include the specialized training Mr. Davis received. JGI argues that it provided Mr. Davis with "substantial and valuable specialized training," which made Mr. Davis "a more valuable employee to a competitor [such as ASG]." JGI also contends that Mr. Davis was privy to JGI's "confidential information" and was essential to its "customer relations." Special facts, which might support the enforcement of a non-competition provision, might include specialized training received from the employer, access to confidential information such as business secrets, confidential pricing information and confidential customer lists, and situations where the employer's customers tend to associate the business with the employee because of repeated contacts with him. *Vantage*, 17 S.W.3d at 644. However, the applicable rule is that "general knowledge and skill appertain exclusively to the employee, even if acquired with expensive training, and thus does not constitute a protectable interest of the employer." *Hasty*, 671 S.W.2d at 473. As this Court observed in *Selox Inc. v. Ford*, 675 S.W.2d 474 (Tenn. Ct. App. 1984), "[a] line must be drawn between the general skills and knowledge of the trade and information that is peculiar to the employer's business." *Id*. at 476 (quoting Restatement (Second) of Contracts § 188, comment (g)); *see also Corbin*, 2003 WL 22843167, at *6 (quoting *Hasty* and holding that knowledge and skill acquired through expensive training is not a protectable interest if the knowledge and skill are not peculiar to the employer). As set out in full context above, the trial court found that "[t]he training Davis received with Johnstone is generally the same training he would have received in any other office in his quest to become a certified real estate appraiser. There is no secret training that others do not know about which would give Davis an unfair advantage over [JGI] . . . ." In other words, the skills Mr. Davis gained through his employment with JGI reflect "general skills and knowledge of the trade," *Selox*, 675 S.W.2d at 476, and are not "peculiar to [JGI's] business." *Id*. Likewise, the trial court found that JGI did not have an exclusive customer list that Mr. Davis might reference in his work with ASG. In fact, the trial court found that Mr. Davis had no "special relationship with [JGI's] customers, such that [Mr.] Davis would enjoy an unfair competitive advantage . . . ." As discussed above, in the absence of a transcript or statement of the evidence, this Court must presume that there was sufficient evidence before the trial court to support its judgment. *PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship*, 402 S.W.3d at 661; *Outdoor Mgmt., LLC*, 249 S.W.3d at 377; *McKinney*, 569 S.W.2d at 832. Applying this standard to the trial court's findings, we can only conclude that JGI has failed to prove any facts, such as those outlined in *Vantage*, that would warrant enforcement of the non-competition provision of the parties' 2005 Agreement.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Johnstone Group, Inc., and its surety, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE